POPE *et al. v.* DYKES *et al.*

*(Nashville.* December Term, 1905.)'

1. **PUBLIC OFFICERS.** Taxpayer may sue to prevent illegal diversion of funds by.

A taxpayer of a county,'for himself and other taxpayers, may maintain an action to prevent the commission of an unlawful act by public officers, the effect of which would be to divert a public fund from the purpose for which it was intended by law, and thus increase his burden of taxation. (*Post, pp.* 239-242.)

Cases cited and approved: Bradley v. Commrs., 2 Humph., 432; Ford v. Farmer, 9 Humph., 159; Maury Co. v. Lewis Co., 1 Swan, 245; Bridgenor v. Rodgers, 1 Cold., 260; Colburn v. Chattanooga, 1 Shan., Tenn. Cas., 22; Morris v. Nashville, 6 Lea, 340; Bouldin v. Lockhart, 1 Lea, 200; Lynn v. Polk, 8 Lea, 121; Lindsay v. Allen, 112 Tenn., 637.

Case cited and distinguished: Patton v. Chattanooga, 108 Tenn., 223.

2. **SAME.** Same. Court will not interfere with lawful discretion of.

In the absence of fraud, a court of equity will not undertake to control the action of public officers constituting a *quasi* judicial tribunal, when they are acting within the scope of their authority, on matters lawfully committed to their discretion. (*Post, pp.* 242, 243.)

Cases cited and approved: Horton v. Mayor, etc., 4 Lea, 49; State v. Taylor, 107 Tenn., 457.

3. **SAME.** Same. Same. Case in judgment.

Marion county was authorized by special act to issue a certain amount of its bonds for the purpose of improving eight designated public roads, described in numerical order, and extend-

Pope v. Dykes.

ing into different parts of the county. The road commissioners after expending about two-thirds of the sum appropriated upon the roads so specified, leaving unfinished a large part of each which could not be completed with the remainder of said fund, directed their engineer to build a new road, not named in the act, the cost of which would consume nearly all of the unexpended balance of said appropriation. Upon a bill filed by complainants, as taxpayers, to enjoin the commissioners from using any part of the unexpended funds to build the new road, and to compel them to apply said funds to the completion of the roads in the order named in the act, it was held: (1) that said commissioners had no authority to use any part of said funds to build a road not designated in the act; (2) that the bill was properly filed by complainants, as taxpayers, to enjoin the proposed illegal diversion of said funds; (3) that the act did not require the roads therein designated to be built and completed in the order therein named, but the enumeration was merely descriptive; and (4) that the court will not interfere with the discretion exercised by the commissioners in distributing the funds among all the roads named, thereby giving all sections the benefit of the fund as far as it would go.

Act cited and construed: 1903, ch. 290.

FROM MARION.

Appeal from the Chancery Court of Marion County.—T. M. McConnell, Chancellor.

A. R. Hall, C. C. Moore and Byron Pope, for Pope et al.

Brown & Spears and W. D. Spears, for Dykes et al.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This bill was preferred by complainants as citizens and taxpayers of Marion county, Tennessee, against the defendants, J. J. Dykes, Spencer Anderson, T. G. Garrett, and John Prater, composing a majority of the Marion county road improvement commission, and J. R. Pryor, county judge of said county, for the purpose of enjoining said commissioners, their engineer in chief, agent, or contractors, from further working or building a certain mountain road from Inman to the Hamilton county line, and to restrain the county judge from paying out any of the road fund for any work that has been or may be done on said road.

It is specifically prayed that defendants be enjoined from further working on the Battle Creek road and Sweden Cove road (which work is now being done) until the other roads mentioned in the act be completed, except that said Sweden Cove and Battle Creek roads be macadamized as far as said road has been graded, but graded no further.

It appears from the recital of the bill that defendants Dykes, Garrett, and Anderson, together with complainant Byron Pope, and J. G. Lancaster were appointed commissioners for the purpose of laying out and improving certain public roads in Marion county under the provisions of an act of the general assembly of the State of Tennessee passed on the 1st day of April, 1903. It is alleged that on the 19th of May, 1903, said board of

commissioners met and organized by the election of defendant J. J. Dykes as chairman and T. G. Garrett, secretary, and proceeded to the discharge of their official duties.

The first section, c. 290, p. 815, of the Acts of 1903, is as follows:

"That the county court of Marion county, Tennessee, be and is hereby authorized and empowered to issue bonds of said county not to exceed $150,000 for the purpose of improving and building the following named public roads of said county:

"(1) The public road leading from Jasper, Tennessee, to the Alabama State line by way of South Pittsburg;

"(2) The public road leading from Jasper, Tennessee, to the Sequatchie county line by way of Victoria and Whitwell;

"(3) The public road leading from Jasper, Tennessee, to the Sequatchie county line by way of Inman, on east side of Sequatchie river;

"(4) The public road leading from Jasper, Tennessee, to Shellmound;

"(5) The public road leading from Jasper, Tennessee, to Monteagle, Tennessee, by way of Ketchell and up Battle Creek;

"(6) The public road leading from Jasper, Tennessee, to the Hamilton county line to Chattanooga, Tennessee, by way of Inman, etc.

"(7) The public road leading from the ferry at South

Pittsburg on south side of Tennessee river to the Hamilton county line by way of Whiteside.

"(8)    The public road leading from Ketchell, Tennessee, up Sweden's cove."

It is then alleged that, immediately after the county court voted to issue the bonds, pursuant to the provisions of said act, the said commission, including the complainant Pope, proceeded to make contracts for the building and improving of the roads set out in said act. It is then alleged that there has been expended for the building and improvement of said public roads the sum of $92,000, leaving $58,000 of said appropriation still unexpended.

It is then charged that, with this large amount of money expended, there has been no one of said roads completed or finished, but only a portion of the various roads have been worked or builded, leaving a large per cent. of the roads which have been commenced unfinished, all of which is contrary both to the spirit and letter of the statute. Complainants charge that it was contemplated by the statute that the most important and more frequently traveled roads should be improved first, and said roads be marked and completed in the order named in said act.

The bill then sets out specifically the amount of work done on the several roads designated in the act and an estimate of the amount that will be required to finish said roads. It is alleged that the commissioners have adopted the policy of working a little on the various

Pope v. Dykes.

roads and leaving all unfinished, which is not in accordance with the purpose or design or letter of the law under which said roads are being improved.

It is stated in the bill that the completion of the first four roads designated in the act of assembly which are the main and most important thoroughfares in the county, will consume all of the funds yet on hand. But the gravamen of the bill is mainly directed to the action of the commissioners instructing the engineer in chief to have the contractors proceed at once to build a certain road across the mountain which had been previously run out and located by the engineer. The allegations of the bill on this subject are as follows:

"Complainants would show the court that said road as laid out and located by said engineer is not one of the public roads designated in the act which should be improved and worked by said commission; but, on the contrary, instead of being a public road, it is entirely a new road and is not located or run out where any public road was ever located. Said road as located by the engineer, and ordered open and worked by said commission, runs from the main valley road about twelve or fourteen miles from Jasper, at a point nearly across the valley from Whitwell, Tennessee, and only some three or four miles from the Sequatchie county line, and from said point across Walden's ridge to the Hamilton county line, being some twelve or fifteen miles in length; said road will cost, according to the estimate of the engineer, at least $25,000 to build, and this estimate

does not include any gravel or macadam, but only excavations, and grading and graveling would cost at least $20,000 more, thus consuming the greater portion of the funds which should be used to improve the public roads in the manner and order designated by the act of assembly."

It is then alleged that a force of men have been put to work on said road and are proceeding to build it under instructions from said three commissioners, leaving the main work on the other roads unfinished, and will proceed to expend said sum of money above stated, to wit, over $25,000 to $45,000, unless stopped from so doing by writ of injunction.

It is further charged in the bill that this work was ordered to be done by a majority of the commission and in the absence of two of the members, Garrett and Pope.

The construction of said Acts 1903, p. 815, c. 290, by the complainants is thus stated in the bill: "The various public roads to be worked upon are to be improved as designated in the act, and that said roads are designated in the order in which they shall be improved, and said commissioners cannot legally expend any funds on any road or set of roads until those first in order are worked and improved; or, in other words, such roads first mentioned in said act as can be completed with the funds on hand must first be worked upon and improved."

Complainants are further advised and so charge "that said act of assembly only authorizes the commissioners to work on and improve the eight roads designated in

the act, and does not authorize said commissioners to locate and build new roads in said county, as they are attempting to do in building said road from Sequatchie valley across Walden's ridge to the Hamilton county line at the mouth of Suck creek on the Tennessee river."

It is then alleged "that said road contemplated to be builded will pass through an entirely wild and uninhabited locality, there not being one single habitation or settlement on said road, and through the roughest mountain country, gorges, rocks, bluffs, gulfs, and dense woods. It will be practically of no benefit to the general traveling public of Marion county for whose benefit those roads will be improved, and but a comparative few would derive any advantage by said road; it being located in one corner of the county."

It is then alleged that two of the commissioners, T. G. Garrett and Byron Pope, earnestly protested against the attempt to have said road built, and at more than one meeting of the commission by their opposition prevented said work from being ordered, and not until at the meeting April 29, 1905, when said two road commissioners were absent, was the effort successful.

Complainants charge "that the building of this road is a violation of the trust conveyed to said commissioners by this act, and is a misappropriation of the funds intrusted to their care, and, should said road be builded as contemplated and commenced, the county and taxpayers would be irreparably injured by the diversion of said funds from the purpose for which it was intended,

to wit, the improvement and working of the public roads of said county."

We have thus presented a condensed statement of the allegations of the bill, which sufficiently show the issues intended to be raised. In accordance with the prayer of the bill, an injunction issued and was served upon the defendants. A demurrer was interposed to the bill, assigning two causes: First. The construction put upon the act sought to be construed in the complainant's bill is erroneous, in so far as it undertakes to enforce the execution of that act by building and repairing the roads mentioned therein in the order in which they are set forth in the act. This is not the proper construction put upon it by the legislature, or by the commissioners whose duty it is to enforce it. Second. The act of the general assembly, under which the bonds were issued and the roads built, confers on the commissioners discretion as to the roads to be improved, the manner of construction, etc., and it is beyond the power of the chancery court to control that discretion, in the absence of the charges of fraud and corruption against the commissioners.

The defendants also answered the bill and subsequently obtained leave to amend the demurrer by incorporating therein the following additional grounds, viz.: "Because said complainants and none of them had or had shown any peculiar or particular injury suffered or sustained which entitles them or either of them to maintain this bill. On the 25th day of January, 1905, the injunc-

tion was dissolved on bill and answer. At the ensuing term, the demurrer was sustained and the bill dismissed, and a reference ordered for damages on the injunction, and also for a fee for the defendant's solicitors, Messrs. Brown & Speers. The complainants appealed, and have assigned the following errors:

(1)   The court erred in dissolving the injunction.

(2)   In sustaining the demurrer and dismissing the bill.

(3)   In directing the fees of defendant's counsel to be paid out of the funds in control of the road commissioners, and directing a reference to ascertain the amount of the same.

(4)   In directing a reference to the master to ascertain the damages resulting to defendants by reason of the alleged wrongful suing out of the injunction writ in this cause.

The first question to be settled is in respect of the rights of complainants to maintain this bill. The precise ground upon which complainants rely is thus stated by their learned counsel: "Our contention is that this is a suit on behalf of taxpayers to prevent a mal-administration of public funds, derived from sales of public bonds, the principal and interest of which will have to be paid by the taxpayers of the county, thereby necessarily increasing the burden of taxation, in which the taxpayers have such a special interest as entitles them to a status in court. . . . It has always been understood as axiomatic that a taxpayer, for himself and

other taxpayers, might maintain an action to prevent the commission of an unlawful act, the effect of which would be to increase his burden of taxation, or to divert a public fund from the purpose for which it was intended by law. In cases like this, the taxpayers have such a special interest in the subject-matter as will authorize them to maintain an injunction." Counsel cites in support of his proposition *Bradley* v. *Commissioners*, 2 Humph., 432, 37 Am. Dec., 563; *Ford* v. *Farmer*, 9 Humph., 159; *Maury County* v. *Lewis County*, 1 Swan, 245, 246; *Bridgenor* v. *Rodgers*, 1 Cold., 260; *Colburn* v. *Chattanooga*, 2 Tenn. Cas., 22; *Morris* v. *City of Nashville*, 6 Lea, 340; *Bouldin* v. *Lockhart*, 1 Lea, 200; *Lynn* v. *Polk*, 8 Lea, 121. But it is said the rule announced in the cases just cited has been changed by the recent ruling of this court in *Patton* v. *Chattanooga*, 108 Tenn., 223, 65 S. W., 414.

In *Patton* v. *Chattanooga*, an ordinance had been passed by the mayor and aldermen granting to T. S. Willcox and associates a franchise for the construction and operation of a telephone and electric light plant within the city, and the bill was filed by nineteen citizens and taxpayers of Chattanooga on behalf of themselves and all other taxpayers of Chattanooga on behalf of themselves and all other taxpayers, voters, and property owners, against the city and the mayor and aldermen and against Willcox and his associates, to have the ordinance declared void upon the ground that it granted an exclusive franchise contrary to the public good and

sound policy. It was held by this court that the ordinance in question was not of a nature that inflicts or imposes upon the complainant citizens any loss, burden, injury, or deprivation of rights that is not common to the entire body of citizens and taxpayers. It was further held that it is essential in the bill brought by citizens and taxpayers to enjoin a city ordinance on account of its alleged invalidity that complainants aver that they are or will be subjected by such ordinance to some loss, burden, injury, or deprivation of rights peculiar to themselves and not imposed alike and in common upon the entire community. Matters of common interest affecting alike all members of the community are within the exclusive jurisdiction of said authorities.

The court further said: "In view of the uniform authorities on this subject, it is clear that complainants have no status in court. What injury can this ordinance do to them which is not common to all citizens? The ordinance does not deal with the question of taxation, and hence cannot affect their tax burdens. The streets, as streets, are not the property in any sense of individual citizens. A taxpayer has no more proprietary interest in them than any other citizen. They are the property of the common public."

But the case made in the present bill is altogether different. It is alleged herein that defendants are acting outside of the authority conferred upon them by the act of 1903, in that they are diverting public funds to the

building of a road not authorized by the act, which will result in irreparable injury to the county and taxpayers. The effect of the misappropriation of these funds would of course be the imposition of additional tax burdens upon the complainants. We are therefore of opinion that complainants are entitled to maintain this bill to the extent that it seeks to enjoin the building of the mountain road which is not authorized by the act of 1903. *Lindsay* v. *Allen,* 112 Tenn., 637, 82 S. W., 171. But as to the second aspect of the bill, in which complainants seek to compel the commissioners to build the other roads in the order named in the act of 1903, we hold the decree of the chancellor was correct.

There is no allegation in this bill that the commissioners are acting fraudulently or corruptly, but it is alleged that defendants have misconceived their duties and are not exercising a sound discretion in their performance. We are of opinion that a court of equity has no jurisdiction to control the discretion vested by the act of assembly in the board of road commissioners. *Horton* v. *Mayor & City Council,* 4 Lea, 49, 40 Am. Rep., 1.

Mr. High, in his work on Injunctions (volume 2, art. 1025), says:

"In discussing injunctions against public officers, it is important to observe that courts of equity do not interfere by injunction for the purpose of controlling the action of public officers constituting *quasi* judicial tribunals, such as a board of supervisors, commissioners of highway, and the like, on matters properly pertaining to

other jurisdictions, nor will they review or correct errors in the proceedings of such officers.

"So where commissioners of roads and highways are by law intrusted with full jurisdiction of matters pertaining to change in roads, a court of equity will not interfere with the exercise of their discretion, unless a strong case of fraud or irreparable injury is shown. And where they have exercised their discretion and made their decision in good faith, and without any intention of injuring private persons, an injunction will not be allowed against their action, when they are acting within the scope of their authority and discretion, however impolitic and impressional may be the law under which they are acting."

Mr. High further says, in article 1270: "A court of equity will not interfere by injunction with the action of a board of commissioners appointed to establish and repair streets and make municipal improvements, when municipal authorities are acting within recognized powers or exercising the discretionary power. But a court of equity has not jurisdiction to interfere unless the power or discretion is being manifestly abused to the oppression of others." *State* v. *Taylor,* 107 Tenn., 457, 64 S. W., 766.

We do not agree with the contention of complainants that the act of 1903 requires these roads to be built and completed in the order designated in section 1 of the act, but think the enumeration was simply descriptive and mere subdivisions of the act.

Pope v. Dykes.

The construction contended for would involve the anomaly that the whole fund might be used in the construction of the first four roads, leaving the remainder without any benefit. The commissioners adopted the policy of distributing this fund among all the roads, thereby giving all sections the benefit of the fund to the extent it would go.

But without undertaking to construe the act, we hold that complainants are entitled to maintain the bill so far as an injunction is sought against the construction of the mountain road, and, in this respect, the demurrer is overruled, but as to other matters wherein the bill seeks to control the discretion of the commissioners, the demurrer was properly sustained. The costs will be paid by the commissioners, and the cause remanded for an answer.