Crye v. Monroe Co.

JOE M. CRYE *et al. v.* MONROE COUNTY *et al.*

(*Knoxville.* September Term, 1923.)

1. **HIGHWAYS.** Road commissioners may compete roads benefiting greatest number where proceeds of bond issue are insufficient for all enumerated roads.

Where the proceeds of road bonds issued under Pub. Acts 1st Ex. Sess. 1913, chapter 26, are not sufficient to enable road commissioners of the county to macadamize all of the roads enumerated in the resolution submitting the question, of the bond issue to the people, the commissioners are not required to prorate the fund to the enumerated roads, but are empowered to complete the roads by which according to their best judgment the greatest number of people will be served, though some of the enumerated roads will receive no benefit, notwithstanding section 12. (*Post, pp.* 247, 248.)

Case cited and approved: Pope v. Dykes, 116 Tenn., 230.

2. **HIGHWAYS.** Roads enumerated in resolution submitting bond issue to people need not be constructed in order named.

Roads enumerated in resolution submitting question of bond issue to the people under Pub. Acts 1st Ex. Sess. 1913, chapter 26, need not be constructed in the order in which they are enumerated, the enumeration being merely descriptive. (*Post, p.* 248.)

3. **HIGHWAYS.** Resolution submitting question of road bond issue to people can require that roads be constructed simultaneously, or that fund be prorated, if insufficient.

Resolution submitting question of road bond issue to people can require that roads enumerated be constructed simultaneously or that funds be prorated if insufficient for completion of all roads. (*Post, pp.* 248-250.)

Crye v. Monroe Co.

FROM MONROE.

Appeal from the Chancery Court of Monroe County.— Hon. T. L. Stewart, Chancellor.

Divine & Guinn and M. F. Valentine, for appellants.

R. Beecher Witt, for defendants.

Mr. Justice McKinney delivered the opinion of the Court.

Where the road commissioners of a county are legally authorized, out of the proceeds of a bond issue, to macadamize certain designated roads, and the fund is not sufficient to macadamize all of said roads, is it the duty of the commissioners to prorate the fund of the several roads enumerated in the act, or have they the power and the discretion to complete the roads, by which, according to their best judgment, the greatest number of people will be served, and this notwithstanding some of the roads enumerated receive no benefit from the fund?

This we answer in the affirmative. The theory of all improvements of a public nature is the greatest benefit to the greatest number. Among those who are expert in the science of road building it is generally conceded that it is better to have one completed highway, and that more people are served thereby, than to have two highways only half completed. This is the system upon which highway construction is being carried on in the more progressive States.

The county commissioners are chosen because of their knowledge of road building and their acquaintance with local conditions, and a very wide discretion is vested in such officials under all of the authorities, the only limitation upon their power being that they act impartially and honestly. Of course, as was held by this court in *Pope* v. *Dykes,* 116 Tenn., 230, 93 S. W., 85, they would not have the right to divert the funds to roads or highways not specified in the act.

In the case just referred to it was expressly held that the roads did not have to be constructed in the order in which they were enumerated in the act, but that the enumeration was merely descriptive. That being true, they can construct project No. 10 first and No. 1 last, and if the funds have been exhausted before No. 1 is reached then they will be excused from constructing same, and it is then up to the county to provide more funds if the construction of the other roads is desired.

The county can limit the power of its road commissioners, if it so desires, by providing, in the resolution submitting the matter to the vote of the people, that the roads enumerated are to be constructed simultaneously, or that the funds are to be prorated to the various roads according to mileage; but, in the practical application of that method, it is quite likely that the results would be most unsatisfactory.

The system most generally accepted is to build the main arteries first—that is, the road that will serve the greatest number of people—and then add branches or laterals when conditions justify it.

In the instant case bonds to the amount of $325,000

were issued. The resolution provided that seventeen specified roads, aggregating ninety-seven miles, be graded at a cost not exceeding $500 per mile, and that eleven specified roads, aggregating eighty and one-half miles, be macadamized.

This cause was presented on bill and demurrer, and the former charges that all of the fund has been expended without detailing how it was expended, but charging that no portion of same was expended on the third road in the list to be macadamized, and upon which complainants reside.

There is no charge of fraud in the bill or charge that any of the funds were expended on any other roads than those enumerated in the resolution. Hence we assume that the commissioners constructed said roads in the order of their importance, as set forth above, and that before getting to the road involved the fund had been exhausted.

Regardless of whether the theory of road construction, set forth herein, is correct, we do not feel justified in reading into the act a provision which it does not contain, viz.: That the commissioners must, at their peril, ascertain in advance the costs of the improvement of all the roads enumerated, and if the fund is inadequate to macadamize them all that they must prorate the fund to the several roads. Such, in our opinion, was not the intention of the Legislature.

In 36 Cyc. 1173, it is said: "Laws enacted in the interest of the public welfare or convenience,. for the construction of works of great public utility, . . . should be liberally construed. . . ."

We are, therefore, of the opinion, as was the chancellor

and the court of civil appeals, that the commissioners did not violate their trust, and are not amenable to complainants for their failure to macadamize the road upon which they reside.

These bonds were issued under and by virtue of chapter 26 of the First Special Session of the General Assembly of 1913, and it is earnestly insisted that the provisions of that act, especially section 12, are in conflict with the views expressed above.

We have carefully examined same, and are unable to agree with counsel in that contention. Section 12 is as follows:

"Be it further enacted, that after all the roads that were laid out and provided for in the resolution have been graded and macadamized for the full length of each road, then should there afterwards remain a surplus, it shall be expended on such other road or roads not set forth in said resolutions, as in the judgment of the road commissioners will serve the greatest number of people anywhere within said county; and provided, further, that should there be more than one town or railroad point within said county from which there are to be constructed roads, it shall be the duty of the road commissioners to provide in their contract with any contractor to whom they let said contract that the work shall begin simultaneously at all the railroad points and thus continue till all the roads from each point are completed, or till all the money provided for has been expended."

The above section is limited to the surplus funds after the roads enumerated in the act have been completed, and has no application in the present cause.

Affirmed.