ENGLAND *et al. v.* CITY OF KNOXVILLE *et al.*

(*Knoxville,* September Term, 1945.)

Opinion filed April 18, 1946.

JOEL H. ANDERSON, of Knoxville, for appellants.

JOSEPH A. MCAFEE and W. B. LOCKWOOD, Director of Law, both of Knoxville, for appellees.

MR. JUSTICE NEIL delivered the opinion of the Court.

The complainants filed their original injunction bill in the Knox County Chancery Court against the City of Knoxville and E. E. Patton in his official capacity as mayor of said city, to enjoin and have declared void an ordinance changing the official time of the city from Central Standard time to Eastern Standard time.

The complainants allege that they are citizens and residents of the City of Knoxville, Tennessee, and have been for many years; and that "they bring this suit on behalf of themselves and for all other citizens of said city."

The charter of Knoxville provides that ordinances may be enacted by the city council or by initiative and referendum. The ordinance here assailed was adopted by majority vote of the people of Knoxville in an election regularly called and held by the Election Commissioners of Knox County, as provided by law. The charter provides that, before an ordinance can be submitted for adoption under the initiative and referendum clause, a petition

must be duly signed by more than twenty-five per cent of the total votes cast for all candidates for the office of city judge in the last regular election.

The complainants allege that 130 separate petitions were circulated in Knoxville by members of the Junior Chamber of Commerce and that these petitions contained the names of 2,838 legal voters, and in response thereto the County Board of Election Commissioners issued the following certificate:

"To The City Council
For The City of Knoxville, Tennessee
"Certificate Of Sufficiency

"This is to certify that the undersigned election commission of Knox County, Tennessee, as required by the City Charter of Knoxville, Private Acts of 1923, Chapter 412, as amended, has examined the attached petition incorporating therein a proposed ordinance for the adoption of Eastern Standard Time by the City of Knoxville; that the petition is signed by the required number of persons who are qualified voters as shown by the registration books in this office; that the number of electors signing the same is more than 25% of the total votes cast for all candidates for the office of City Judge in the last regular city election, and that the petition is sufficient for the purpose for which it is filed.

'This 8th day of November, 1945.

"Charles J. Brown, Chairman
"Harold Wimberly
"Dewey W. Cate
"Knox County Election Commission."

The election was held with the result that the ordinance was adopted. The complainants assail the ordinance upon the ground that the provisions of the charter of Knoxville were not complied with.. The certificate of the

elction commissioners is.questioned, it being alleged that, "The said election commissioners wholly failed to check said petitions, or to pass upon the many errors and irregularities contained therein, and issued their certificate without any such inspection, and upon the unsworn statements of the members of said Junior Chamber of Commerce with respect to said matter. Said members of the said Junior Chamber of Commerce had counted many names upon said petition as electors who were not electors or qualified voters in the City of Knoxville, and they ignored many other irregularities in connection with said petitions as hereinafter set out."

It is averred that if certain names were purged from these petitions, there would not be a sufficient number of qualified voters remaining to authorize the holding of an election. We find it unnecessary to recite in detail the many averments bearing upon the legality of the proceedings which are declared to be necessary as a condition precedent to an election under the initiative and referendum clause of the charter.

Complaint is made that the ordinance will work a great hardship upon all classes of people and especially school children, working people, and others who will be compelled to get up at an early hour in the morning; that said ordinance will conflict with Standard Time which must be observed by transportation companies, etc.; that if the said ordinance is put into effect, they will suffer an irreparable injury. In Section V of the bill the following is alleged:

"These complainants allege and show the Court that they, and the hundreds of others in the same class, represented by them and for and on whose behalf they file this bill, as well as for themselves, are laborers working in the mills, factories and shops in the City of Knoxville

and in places adjacent thereto. Many hundreds of them are required to appear at their places of work at from six to six-thirty in the morning. They will be intimately affected in their daily lives by the proposed ordinance, if it shall be enforced. Many of them live at a great distance from the places where they work, and they are compelled to use either their own cars for transportation to and from work, or the transit lines in the City of Knoxville. If the ordinance shall be enforced, they will be required to get up in the morning from two to three hours before daylight in order to get to their respective places of work. They will not be able to get sufficient sleep if they are compelled to rise at these very early hours, and they will be adversely affected, both with respect to health and comfort. They will be compelled to go forth in these early hours of the morning, in the snow, the rain and the fog, and will incur increased hazards incident to traveling under these conditions through the traffic of the City.''

In addition to the foregoing, it is insisted that Sections 98, 99, and 100 of the charter of Knoxville (the initiative and referendum clause) violate Sections 1 and 3 of Article II, and Section 8 of Article XI, of the Constitution of Tennessee.

The defendants demurred to the bill upon six separate grounds, the principal objections, however, being (1) that the bill ''fails to present a judicial question for determination,'' and (2) that ''it fails to show that complainants or any one of them sustain any injury which is not common to all members of the public, or that they are taxpayers and that their tax burden will be in any way increased by said ordinance, or that they sustain any injury that entitles them to bring this suit.''

The special chancellor sustained the demurrer and dismissed the bill. The complainants thereupon appealed

to this Court and assigned errors as follows: (1) the bill presented a judicial question for determination; (2) the Court was in error in holding that the complainants were not entitled to bring this suit. Other errors are assigned, but we find it unnecessary to consider them. If the complainants are not entitled to bring this suit, all other questions made on the appeal become wholly immaterial.

With respect to the right of complainants as citizens and taxpayers to maintain a suit of this kind, it should be noted at the outset that there is no averment in the bill that they or any one of them will suffer any additional tax burden as a result of the enforcement of the ordinance. The special chancellor, in a well considered opinion, correctly appraised the injuries complained of and held that, since they were common to the general public, the present action cannot be maintained. We quote the following excerpt from his opinion:

"What specific injury, not common to all the public, does the bill disclose the complainants will suffer by the enforcement of the time change ordinance?

"While they aver that they will be injured in their mode of life and manner of living and that their health and comfort will be adversely affected by the need for, arising earlier in the morning and by the disadvantages of meeting transportation schedules, nevertheless, everyone alike, that is, the entire public in common would be affected by the same and kindred disadvantages. There are those who would have to retire earlier than they are now accustomed to do to meet the new schedules. The entire public as well as the complainants would be compelled to rearrange its hours of retirement and arising. Each person would have to adjust himself to the transportation problem. The injuries averred in the bill are

general and common, not particular and specific to the complainants, and such being the case, the present action is of a kind that cannot be maintained by a citizen or citizens.

"Time, like weather, is common to all. In one way or another it has its advantages and disadvantages for all alike. What would be one man's benefit under Eastern time might be his burden under Central time. Conversely, this conclusion would be the same. Whether a change of standard time is wanted or not wanted by Knoxville is not for a court, in a suit by citizens, to say. A proposal of change from one standard of time to another for the city is purely a legislative matter to be adopted or rejected by the Council or by the electors under the plan of the initiative and referendum. Nor is any judicial question presented here."

The rule of law applicable to the instant case was announced by Mr. Justice Cook in *Reams v. Board of Mayor & Aldermen of McMinnville,* 155 Tenn. 222, 225, 291 S. W. 1067, 1068: "If the conduct does not affect the private rights of the citizen, but touches public rights common to all, the redress must be through the proper officials, because the bill can only be maintained to protect private rights if brought by the taxpayer who cannot maintain it in the assertion of a right common to all citizens of the town."

The complainants proceed upon the theory, and only upon the theory, that the result of the change from Central Standard time to Eastern Standard time will be injurious to the city at large—to the common body of citizens. In *Patton v. City of Chattanooga,* 108 Tenn. 197, 65 S. W. 414, 419, the complainants sought to have an ordinance declared invalid which provided for granting a franchise for the construction and operation of a tele-

phone and electric plant within the City of Chattanooga. The bill was filed by nineteen named citizens and taxpayers on "behalf of themselves and all other taxpayers, voters, and property owners of Chattanooga." It was there held that the complainants had shown no injury that was not common to the general public. Mr. Justice SNODGRASS, speaking for the Court, said at page 222 of 108 Tenn., at page 420, of 65 S. W. "In all such matters —matters which affect not the private rights of certain citizens, but only those public rights which are common to all, and incident to citizenship itself—the law confers upon the duly-elected representatives of the people the sole right to appeal to the courts for redress. It is only when he can go further, and show some right which he has aside from those rights which are incident to the mere fact of citizenship, that he may, for himself or in behalf of others similarly situated, invoke the conceded jurisdiction of the courts to restrain an ordinance passed irregularly or without authority." See also his further comment on page 223 of 108 Tenn., on page 421 of 65 S. W.: "It is a well-settled rule that equity will not interfere by its injunctive process in a case like this unless the complainants show that they will suffer some special injury, and not merely an injury in common with the body of the citizens. This rule is, we believe, without exception. There is a line of Tennessee cases in which taxpayers, as such, may maintain an injunction against public officials. But these are cases involving public revenues, and in which the result of the proposed action will be to increase the burden of taxation. It being proposed to increase the burden of taxation upon each individual taxpayer, he will sustain an injury not common to those citizens who are not taxpayers; and hence, as a taxpayer, on behalf of himself and other taxpayers, he has a status

in court to contest the legality of the accomplished or proposed action. *Lynn* v. *Polk*, 8 Lea, 121, [76 Tenn. 121]; *Kennedy* v. *Montgomery County*, 98 Tenn. 165, 38 S. W. 1075; *Colburn* v. *Chattanooga*, [*Western*] *R. Co.*, 94 Tenn. 43, 28 S. W. 298.'' See also High on Injunctions, 4th Ed., Vol 2, sec. 1298; *Pope* v. *Dykes*, 116 Tenn. 230, 241, 93 S. W. 85; *Waldauer* v. *Britton*, 172 Tenn. 649, 659, 113 S. W. (2d) 1178.

Complainants contend that ''The right to sue is not confined to taxpayers,'' but that it ''may be maintained to test the validity of the ordinance either upon the ground that it was beyond the powers of the municipality, or that it was not passed according to the forms of law.'' In support of this contention we are referred to *Power* v. *Robertson*, 130 Miss. 188, 93 So. 769, wherein the court held that a qualified elector has the right to challenge the validity of a petition filed with the Secretary of State, the purpose of which was the submission of a proposed law for approval under the Initiative and Referendum. The case is not in point for the reason that it is a proceeding in which the sufficiency of the petition to obtain a referendum is directly attacked.

In the instant case the complainants did not file a bill making a direct attack upon the petition and seeking an injunction against the county election commissioners to restrain them from holding the referendum election upon the ground that the petition was fraudulently procured. Without making the election commissioners of Knox County a party to this proceeding, the complainants undertake to have declared as invalid because the certificate authorizing and calling for the election was fraudulently procured, an ordinance that was approved by a majority of the people of Knoxville, in an election where there was no fraud or irregularity. This clearly constitutes a

collateral attack upon the election commissioners' certificate and cannot be maintained. *Esch* v. *Wilcox,* 181 Tenn. 165, 178 S. W. (2d) 770; *Jordan* v. *Jordan,* 145 Tenn. 378, 239 S. W. 423; *Bates* v. *Dyer,* 28 Tenn. 162, 163; *Stockton* v. *Murray,* 25 Tenn. App. 371, 375, 157 S. W. (2d) 859.

In further support of the contention that complainants "will suffer peculiar burdens not common to the entire citizenship", the argument is made that "they will be required to get up in the morning from two to three hours before daylight, and on account of this fact they will not be able to obtain sufficient sleep, and as a consequence their health will be impaired." It is further suggested that "complainants will be compelled to incur increased hazards incident to travel during the early morning hours from their homes to their respective places of labor." We think the complainants are unduly alarmed as to the effect the ordinance will have upon their health due to "loss of sleep". It is a conclusion that is entirely unwarranted, as shown by the experiences of the American people during the war years when the clocks in every city and hamlet and the countryside were moved up, and everyone was thereby compelled to rearrange his and her hours of retirement and arising. We know of no case on record wherein any one suffered an injury to health, and few complained of it even as an inconvenience.

The bill does not present a case for equitable relief. The complainants have not suffered, and will not suffer, any injury that is peculiar to themselves and which is not common to every resident of Knoxville. This being true, there is no judicial question presented for our determination.

Affirmed.