WALLDORF *et al. v.* CITY OF CHATTANOOGA *et al.*

(*Knoxville,* September Term, 1950.)

Opinion filed March 9, 1951.

John A. Chambliss, Wm. G. Brown and Jere T. Tipton, all of Chattanooga, for appellants.

J. W. Anderson and W. A. Wilkerson, both of Chattanooga, for appellees.

Mr. Justice Burnett delivered the opinion of the Court.

The appellants (complainants below) filed the original bill in this cause as "citizens, taxpayers and registered, qualified voters of the City of Chattanooga, Tennessee", against the City of Chattanooga and the Chattanooga Housing Authority (the individuals constituting the governing bodies of these two corporations). "The gist of the complaint set out in the bill was that by calling its action a 'resolution' instead of an 'ordinance' the City of Chattanooga circumvented the provisions of its charter which provide that no ordinance of the City shall go into effect for two weeks following its passage." There is no allegation in the bill that the tax burden of complainant would or could be increased by reason of the passage of said resolution. The bill was answered under oath, as required to be by the bill, and the defendants in this answer denied that the complainants were entitled to any relief. They also specifically answered each averment of the bill and attached to their answer copies of the resolution and the contract made by the City with the Housing Authority. Section 9 of the answer averred that the bill does not show that complainants can or will suffer any injury which is not common to the body of citizens; that complainants show no special injury or interest; that no judicial question is presented; and that complainants are without right to maintain the suit.

Following the filing of this answer the complainants (appellants here) made a motion to strike Section 9 of the answer, under Code Section 10393. On the argument of this motion to strike this portion of the answer the Chancellor denied the motion and dismissed the bill on the grounds that since the complainants had no interest and had shown no special injury, that the bill could not be maintained in any event. The Chancellor in denying the motion in effect invited the complainants (appel-

lants here) to amend their original bill so as to present a question that could or would require proof and could be considered on its merits when he said: "I would be inclined to permit amendments by the original complainants to show a justiciable interest on the part of complainants in the controversy but such has not been proposed."

██ The first proposition we have for consideration, and that primarily urged upon us in argument, is that the Chancellor erred in dismissing the bill on the complainants' motion to strike this Section 9 of the answer, above specifically set forth. We think that the Chancellor was correct in his action hereunder because this portion of the answer went to the heart of the bill. If the bill did not show that the complainants could or would suffer an injury which was not common to the body of the citizens then it was his duty to dismiss the bill. In order for complainants of the kind herein to maintain such a suit they must show some special injury or interest not common to the body of the citizens. *Patton* v. *City of Chattanooga,* 108 Tenn. 197, 65 S. W. 414; *Skelton* v. *Barnett,* 190 Tenn. 70, 227 S. W. (2d) 774; *Porter* v. *City of Paris,* 184 Tenn. 555, 201 S. W. (2d) 688; *Jared* v. *Fitzgerald,* 183 Tenn. 682, 195 S. W. (2d) 1; *England* v. *City of Knoxville,* 183 Tenn. 666, 194 S. W. (2d) 489; *Wright* v. *Nashville Gas & Heating Co.,* 183 Tenn. 594, 194 S. W. (2d) 459; *State ex rel. Allen* v. *American Glanzstoff Corp.,* 167 Tenn. 597, 72 S. W. (2d) 775; *Parks* v. *Margrave,* 157 Tenn. 316, 7 S. W. (2d) 990; *Reams* v. *Board of Mayor & Aldermen of McMinnville,* 155 Tenn. 222, 223, 291 S. W. 1067; *Richardson* v. *Young,* 122 Tenn. 471, 125 S. W. 664; *Pope* v. *Dykes,* 116 Tenn. 230, 93 S. W. 85; *Wilkins* v. *Chicago, St. L. & N. O. Railroad Co.,*

110 Tenn. 422, 75 S. W. 1026, and other cases that might be referred to.                                ,

The purpose of Code Section 10393 is for a complainant to "test the sufficiency of the same or any part thereof, by motion to strike." In other words, when a motion to strike a portion of the answer is made the obvious purpose of complainants in making such a motion to strike is to eliminate this portion of the answer from the pleadings because if the portion of the answer which it has sought to strike goes to the merits and heart of the controversy and could be sustained then it is up to the complainants to get this portion of the answer out otherwise their suit must fail. Obviously therefore, in view of the decisions of this Court above cited, the complainants felt that this portion of the answer, which they moved to strike, went to the very heart of the lawsuit and that if it remained in, the suit must be dismissed. This is true especially in view of the fact that the complainants did not allege any special or peculiar interest in the question not common to the body of the citizenship. Apparently, too, they knew or felt that they were unable to make any such allegation as they were in effect invited to make. This being true the Chancellor was clearly right in dismissing the bill if he was of the opinion that no special or peculiar interest in the complainants was alleged in the bill. It would have been mere idle ceremony for proof to be heard on a bill that did not allege a cause of action. Clearly the trial court may and it is his duty, when a situation of the kind is brought to his attention, to first in his discretion allow amendments if amendments are sought, and then if not to dismiss the bill when there are not sufficient allegations in the pleading to maintain the bill. Gibson's Suits in Chancery, Section 441, and 451, and 525.

We next consider the gravamen of the allegations of the bill, that is, that the City Commission circumvented the charter of the City of Chattanooga when they labeled their action as a "resolution" instead of an "ordinance".

This position cannot be maintained because Code Section 3647.33 authorizes the City Council to pass "by resolution adopted by a majority of all the members of its council or other governing body, which resolution may be adopted at the meeting of the council or other governing body at which such resolution is introduced and shall take effect immediately upon such adoption, and no such resolution need be published or posted." We are cited to no portion of the charter, nor can we find any, that requires the City Fathers to pass an ordinance embodying such matters as are embodied in this resolution, that is, the authorization to make a contract with the Housing Authority. Even if such a requirement was in the charter of the City of Chattanooga, the above Code Section, which is a general law of the State, would take precedence over what is contained in the City charter. This Statute becomes a part of the charter of every City in the State to which the Housing Authority law may apply and controls the right of the City to act, and the manner by which it may act. Regardless of the allegations of the bill it was the duty of the Chancellor to take judicial knowledge of this Statute. And it was also the duty of the Chancellor, nothing else appearing, to presume that the City Commission acted legally and passed a resolution in conformity with the Statute.

The very obvious reason for having such a Statute is to expedite matters of the kind and to prevent their being delayed (that is this Housing program) by charters or ordinances of the City wherein a great deal of time could be taken up by submitting the matter to a vote of

the people. The Commission is elected by the people and if they do not properly exercise their legislative functions as officers of the city government then the people of the city have a perfect right to legislate them out of office at the next election.

It is very ably and forcefully argued that the complainants (appellants here) will sustain special financial injury as taxpayers by reason of the Housing Authority taking these old houses and constructing a Housing project, all of which is shown by the contracts exhibited with the answer. For this reason it is argued that even though the bill does not allege any special injury on behalf of the complainants that this contract with the Housing Authority, made by the City pursuant to the resolution, shows on its face that such an injury will overtake these complainants and for this reason they have a right to question this contract.

This Cooperation Agreement really adds nothing to the rights, duties or liabilities of the City or the Authority, as these are already provided by the laws of the State.

Tax exemption of the Authority's property and bonds is granted under the law. Code Section 1089.1 and 1089.3. This law has been held constitutional and its purposes specifically approved by this Court in *Knoxville Housing Authority, Inc.* v. *City of Knoxville*, 174 Tenn. 76, 123 S. W. (2d) 1085.

Payments in lieu of taxes are provided for in the same act, Code Section 1089.2. It is alleged in the sworn answer that the tax revenue will exceed what is lost by reason of the taking of this property. It seems to us that this sworn answer, under the circumstances of the pleadings here, should have the force and effect of proof or testimony of the defendants who filed the answer.

When the Legislature passed the Housing Authority Act, as contained in the Code, Secs. 3647.1 et seq., it made it the general duty of the City to cooperate with the Authority in planning, construction and operation of housing projects. Code Section 3647.34.

This Court speaking through the late CHIEF JUSTICE GREEN, in *Knoxville Housing Authority, Inc.* v. *City of Knoxville,* supra, specifically approved the various features of this law, including the delegation of powers to cities and authorities, eminent domain, tax exemption of property and bonds of the authority. The Court also very ably and succinctly set forth the reasons why such an Act should be upheld. We have been cited no reasons why the reasoning of this case is not still applicable.

For the reasons above set forth, we must affirm the opinion of the Chancellor.

All concur.