LAUGHLIN v. JOHNSON.

(*Jackson*. May 8, 1899.)

1. DESCENT AND DISTRIBUTION. *Inheritance by illegitimates.*

At common law illegitimates had no inheritable blood, but this has been changed by statute in this State. (*Post, p. 456.*)

2. SAME. *Same.*

Under Acts 1866-67, Ch. 36, Sec. 10 (Shannon's Code, § 4169), providing for inheritance from the mother by illegitimates, equally with legitimate children, and that, "should either of such children die intestate, without child, his or her brothers and sisters shall, in like manner, take his or her estate," illegitimate children share equally with legitimate children the estate of a legitimate child who dies leaving no child, without regard to the source from whence the property came, whether from the mother or elsewhere. (*Post, pp. 456–461.*)

Act construed: Acts 1866-67, Ch. 36, Sec. 10.

Code construed: § 4169 (S.); § 3274 (M. & V.); § 2423a (T. & S.).

Cases cited: Riley *v.* Byrd, 3 Head, 19; Woodward *v.* Duncan, 1 Cold., 562; Scoggins *v.* Barnes, 8 Bax., 560; Murphy *v.* Portrum, 95 Tenn., 605; Shepherd *v.* Carlin, 99 Tenn., 64.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. JOHN L. T. SNEED, Ch.

YOUNG & YOUNG and JAMES M. GREER for Laughlin.

D. M. SCALES and RANDOLPH & RANDOLPH for Johnson.

BEARD, J.   The complainant, Laughlin, is the illegitimate son, and the defendants, Amanda F. Johnson and Josephine P. Clifton, are the legitimate daughters of one Eveline Chunn, who departed this life many years ago.   Louisa J. Hardwick, who was also a legitimate daughter of the same mother, died intestate some time before the institution of this suit, leaving neither husband nor lineal descendants. At the time of her death she was the owner of realty in the city of Memphis, acquired by her by deed from a former husband, and the question in this record is, Does complainant share with the legitimate sisters of the deceased in this property?

At common law a bastard had no inheritable blood, so that if complainant is to be let into an interest in this property as an heir, it must be by virtue of some statute.

It is conceded that the Acts of 1851–52, Ch. 39, and of 1885, Ch. 34, Sec. 1, carried into the Code of Tennessee (Shannon's, §§ 4166, 4167, M. & V., §§ 3273, 3274), gives no support to this claim, but it is insisted that it is provided for in the last clause of Sec. 10, Ch. 36, of the Acts of the Legislature of 1866–67, found in Shannon's Code, at § 4169. That section, as a whole, is as follows: "Where any woman shall die intestate, having a natural born child or children, whether she also have a legitimate born child or children, or otherwise, such natural born child or children shall take, by the general rules of descent and distribution, equally with

the other child or children, the estate, real or personal, of his or her and their mother; and should either of such children die intestate, without child, his or her brothers and sisters shall, in like manner, take his or her estate."

No doubt is entertained that the first clause of this section removes the taint of illegitimacy so far as to confer inheritable blood on the natural born child, and thus enable him or her, as the case may be, to share equally with the legitimate child or children in the estate of their mother who dies intestate.   It is the last clause in the section which raises the present controversy, the complainant insisting that, upon a natural and necessary interpretation of its terms, he is entitled to a share in the estate of Mrs. Hardwick, although it did not come from the mother common to himself and the defendants, while, on the other hand, these defendants insist it is to be construed with regard to the first clause of the section, and that, taken altogether, to use the words of the solicitors of the defendants, in their brief, "the statute applies only to the estate of the mother, real or personal, of the illegitimate, or, in other words, its language confines such illegitimate person to the estate, real or personal, of his, her, or their mother."

We have had occasion in two other cases involving a construction of this statute, upon facts similar to those found in this record, and with like arguments, pressed with so much earnestness and

ability in this case, to carefully examine this stat-
ute, and in each of these cases we have announced
a conclusion adverse to the contention of the de-
fendants. We find nothing new, either in this record
or in the argument presented. A re-examination of
the question satisfies us that the conclusion heretofore
announced is sound. To hold otherwise, we think,
would be to do violence both to the literalism of
the statute as well as the purpose of the Legisla-
ture in enacting it. It is but a culmination of leg-
islation begun in this State in 1819, the design and
effect of which has been to change radically the
status of illegitimates before the law. The Acts of
1851–52 (Shannon's Code, § 4166), heretofore referred
to, provided for the disposition of the estates of
illegitimates who died intestate without child or chil-
dren, husband or wife, while Section 10, Chapter 36,
of the Acts of 1866–67, was a more advanced step
in effectuating the general design to give ample re-
lief to this unfortunate class of persons. The first
part of the section places legitimate and illegitimate
children upon a common ground of inheritance as to
the mother's estate, where she dies intestate, while
the last clause, in distinct terms, does the same
thing for these two classes as to the estate of any
one of either class who may die intestate and want-
ing lineal descendants, without regard to how or
from whom this estate was acquired.

As has already been indicated, the Act of 1851–52,
Ch. 39, was not the beginning of legislation with

regard to illegitimates. For the first time, by Sec. 1 of Ch. 13 of the Act of 1819, the State materially altered the common law rule on this subject. That section is as follows: "When any woman shall die intestate, having natural born child or children, and no legitimate child or children, such natural born child or children shall take, by the general rules of descent and distribution, the estate, real and personal, of his, her, or their mother, and should either of such children die intestate without child, his or her brothers and sisters shall in like manner take his or her estate." For some reason the salient features of this Act were not brought forward into the Code of 1858, but they were embodied in broader terms and with comprehensive effect in the Act of 1866–67 which we are now considering.

The Act of 1819 came up at least twice for construction by this Court—once in the case of *Riley* v. *Byrd*, 3 Head, 19, and again in *Woodward* v. *Duncan*, 1 Cold., 562. In the first of these cases it was held that, under the Act, legitimate brothers and sisters could inherit from an illegitimate, and that the legitimates setting up their claim in that suit were entitled to the land acquired by their bastard deceased brother, while in the last it was ruled that under the provisions of the statute, an illegitimate could not be let in the estate of a legitimate half brother. These two cases illustrated the inequality which was worked under this Act.

To correct this, and to create mutual rights of inheritance as between legitimate and illegitimate brothers and sisters when either should die intestate and without child, was the evident purpose of the Legislature carried into the Code (Shannon's), § 4169. And this view was clearly indicated in *Scoggins* v. *Barnes*, 8 Bax., 560. Nor is there anything in the cases of *Murphy* v. *Portrum*, 95 Tenn., 605, and *Shepherd* v. *Carlin*, 99 Tenn., 64, in conflict with the conclusion here announced.

It is insisted, however, that this construction is out of line with *Giles* v. *Wilhost*, 48 S. W. Rep., a case decided by the Chancery Court of Appeals, whose finding was afterwards affirmed by this Court. That case involved a controversy between an illegitimate sister of an illegitimate brother, who died without issue and intestate, and an illegitimate niece of that brother over the estate of the deceased. It arose under and called for a construction of § 4166 of the Code (Shannon). That section is as follows: "When an illegitimate child dies intestate without child or children, husband or wife, his estate shall go to his mother, and if there be no mother living, then equally to his brothers and sisters by his mother, or descendants of such brothers and sisters."

The words of difficulty in this section were the last, "descendants of such brothers and sisters," and the question was, Should the line of descent thus provided for be extended to illegitimates, or be confined to legitimates? And as these terms admitted of

either construction, in recognition of the well-settled rule of interpretation of statutes that the common law must be allowed to stand unaltered as far as is consistent with a reasonable construction of the new law (*Arthur* v. *Baker*, 11 Md., ——; *Greenwood* v. *Greenwood*, 28 Md., 369; *Horne* v. *M. & O. R. R. Co.*, 1 Cold., 72; *Eaton* v. *Dickinson*, 3 Sneed, 396) the phrase was construed as if it read "legitimate descendants," etc. In other words, the Courts would not go further in the recognition of inheritable blood in illegitimates than the Legislature had unmistakably gone, and it being left in doubt by the use of the terms in question what line of descendants should take under the conditions prescribed by that section, a construction was adopted which involved the least departure from the principles of the common law.

It is otherwise, however, as to the clause of the statute on which the present case depends. It is so plain and unambiguous that we think little, if anything, is left for judicial interpretation. The decree of the Chancellor is reversed, and the cause remanded.