McCamey *et al. v.* Cummings *et al.*

(*Knoxville.* September Term, 1914.)

1. **STATUTES.** Prospective title. Retrospective provisions.

Const., art. 2, sec. 17, providing that no bill shall become a law which embraces more than one subject, that subject to be expressed in the title, is contravened by Acts 1885, ch. 34; the title "An act to provide for the descent of the estates of illegitimate persons who die interstate" being wholly prospective, narrowing the scope of the act to estates of persons dying after its passage, and section 2 applying the provisions of the first section to estates of persons who had died before passage of the act. (*Post, pp.* 498, 499.)

Acts cited and distinguished: Acts 1885, ch. 34.

Constitution cited and construed: Art. 2, sec. 17.

Cases cited and approved: Lindsay v. Savings & Loan Co., 120 Ala., 156; Thomas v. Collins, 58 Mich., 64; Alpin v. Stiles, 83 Mich., 460; Katz v. Herrick, 12 Idaho, 1; State v. King County, 49 Wash., 619.

2. **ESCHEAT.** Estate of bastard. Office found.

Prior to Acts 1885, ch. 34, estates of illegitimates dying intestate, leaving no heirs capable of inheriting under the existing law, stood immediately escheated to and became the property of the State; the title vesting at once without necessity of office found or any suit by the State. (*Post, pp.* 500-502.)

Cases cited and approved: Puckett v. State, 33 Tenn., 355; Hinkle v. Shadden, 32 Tenn., 46; State v. Unknown Heirs, 113 Tenn., 298; State v. Lancaster, 119 Tenn., 647; Turnmire v. Mayes, 121 Tenn., 45; Laughlin v. Johnson, 102 Tenn., 455.

3. **BASTARDS.** Inheritance from. Persons dead. Statutes.

It is not possible for the state, as attempted by Acts 1885, ch. 34, sec. 2, to endow an illegitimate already dead with heritable

McCamey v. Cummings.

blood, that others may claim through him as heirs on his mother's side. (*Post, pp.* 500-502.)

4. **CONSTITUTIONAL LAW. Validity of statute. Persons who may question.**

Defendants, from whom complainants can recover land sued for, only if a statute is constitutional, can raise the question of its unconstitutionality. (*Post, p.* 502.)

5. **CONSTITUTIONAL LAW. Validity of statute. Authority of court.**

The court will not refuse to consider the constitutionality of a statute merely because it is old, and numerous property rights may have been based on it; it not appearing it has ever been before the court or acted on in any way. (*Post, pp.* 502, 503.)

Cases cited and approved: Telephone Co. v. Tel. & Tel. Co., 125 Tenn., 270; State ex rel. v. Baseball Club, 127 Tenn., 294.

6. **STATUTES. Partial invalidity.**

Though Acts 1885, ch. 34, as to descent of estates of illegitimates, contravenes Const., art. 2, sec. 17, because, while its title is wholly prospective, it has a retrospective provision, such provision, being several, will be eliminated and the remainder stand. (*Post, pp.* 503-506.)

Cases cited and approved: State v. Trewhitt, 113 Tenn., 561; Cannon v. Mathes, 55 Tenn., 504; State of Tenn. v. McCann, 72 Tenn., 1; State ex rel. v. Schlitz Brewing Co., 104 Tenn., 715; Malone v. Williams, 118 Tenn., 439; Richardson v. Young, 122 Tenn., 471; State v. Hayes, 116 Tenn., 40; State ex rel. v. Taylor, 119 Tenn., 229.

Constitution cited and construed: Art. 2, sec. 17.

7. **STATUTES. Amendment. Recital in title.**

The words in the title of Acts 1885, ch. 34, "and to amend section 2423 of T. & S. Code," will be treated as surplusage; it not satisfying Const., art. 2, sec. 17, providing that a law which amends a former law shall recite in its caption the title or substance of the law amended. (*Post, pp.* 506, 507.)

Case cited and approved: Railroad v. Maxwell, 113 Tenn., 480.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.—T. M. McCONNELL, Judge.

SIZER, CHAMBLISS & CHAMBLISS, SAMUEL L. BODDY, and RICHMOND, CHAMBERS & COOPER, for plaintiffs.

THOMAS & THOMAS, GARVIN & CANTRELL, MARTIN & TRIMBLE, SAM J. McALLESTER, COOKE & NOLL and J. HODGE McLEAN, for defendants.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The controversy in this case rests on chapter 34, Acts of 1885, which reads as follows:

"An act to provide for the descent of the estates of illegitimate persons who die intestate, leaving no relatives entitled to such estates under existing laws; and to amend section 2423 of T. & S. Code.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that the estates, both real and personal, of illegitimate persons dying intestate in this State leaving no relatives entitled by existing laws to his or her estate, shall go to such persons as would, had the intestate been legitimate, have been his or her heirs on his or her mother's side, in such way and proportions, and under the same rules as provided by existing laws of descent of real and personal estate

among legitimates who have no kin on the father's side.

"Section 2. Be it further enacted, that this act shall apply to the estates of such illegitimates who shall hereafter die, and also to those who have heretofore died but whose estates have not as yet been actually paid over and delivered to the State under the laws of escheat, whether proceedings have been instituted under the laws of escheat or not; and if any such proceedings are now pending, they shall be dismissed on the payment of the fees of the attorney general and the costs of such proceedings to be paid out of the proceeds of the said estates, and all property sought to be escheated by such proceedings shall be distributed in accordance with the provisions of the first section of this act, the laws of escheat now existing notwithstanding.

"Section 3. Be it further enacted, that this act shall take effect from and after its passage, the public welfare requiring it.

"Passed March 3, 1885."

The complainants have sued in ejectment for a large body of land lying on Lookout Mountain, in Hamilton county, this State. By virtue of the second section of the above-mentioned act, they sue as the heirs at law of A. C. McCamey, an illegitimate; their contention being that by the said section they, or those under whom they claim as heirs, were made heirs of said McCamey as persons answering to the description of those who would have been his heirs on his mother's side, under

130 Tenn. 32

the laws existing at the time the act was passed, if he had been legitimate, and had died leaving no kin on his father's side. It is alleged in the bill that Mc-Camey, an illegitimate, as stated, died about the year 1857, owner of the lands referred to; that at the time of his death he left no descendants capable of inheriting his property under the then existing laws; and that said property was subject to escheat to the State of Tennessee under the then existing laws; that this condition continued until the passage of the above act. And it is charged that by virtue of this act the complainants, as next of kin of the mother of A. C. McCamey, were his heirs and entitled to inherit the property, and are therefore owners of it.

There is much else in the bill as to the attitude of the defendants, and some other points, but the foregoing sufficiently presents the matter for decision.

A demurrer was filed to the bill containing many grounds, all of which were sustained by the chancellor, and the bill dismissed. Thereupon the case was brought to this court by the complainants.

We shall consider only one question, and that is decisive of the controversy.

One ground of demurrer is that the above-mentioned act, under which complainants claim, is unconstitutional and void, because it embraces two distinct subjects, in violation of article 2, section 17, of our constitution, which provides that:

"No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

It is contended by defendants that the title is prospective, referring exclusively to persons who should die after the passage of the act, and that the first section falls directly under this title; but that section 2 is in its nature retrospective, embracing the estates of persons who had died prior to the act, and that it thereby introduced a new subject not embraced in the title.

We are of the opinion that the title was wholly prospective, and narrowed the scope of the act to the estates of persons who should die after its passage. The addition of the second section, applying the provisions of the first section to the estates of persons who had died before the passage of the act, introduced a distinct subject, and therefore made the act obnoxious to the section of the constitution which we have quoted. The following authorities are clear on the point:

"A title importing a prospective statute will not cover a retrospective provision." Lewis' Sutherland on Statutory Construction, 253.

To same effect, American & English Encyclopedia of Law (2 Ed.), vol. 26, p. 591; *Lindsay v. Savings & Loan Co.*, 120 Ala., 156, 24 South. 171, 42 L. R. A., 783; *Thomas v. Collins,* 58 Mich., 64, 24 N. W., 553; *Alpin v. Stiles,* 83 Mich., 460, 47 N. W., 241; *Katz v. Herrick,* 12 Idaho, 1, 86 Pac., 873; *State v. King County,* 49 Wash., 619, 96 Pac., 156.

There is still another view equally conclusive. The estates of illegitimate persons who died prior to the act in question, leaving no heirs capable of inheriting under the law as it then stood, immediately escheated to and became the property of the State; the title vesting at once, without the necessity of office found, or any suit brought by the State. *Puckett* v. *State,* 1 Sneed, 355; *Hinkle* v. *Shadden,* 2 Swan, 46; *State* v. *Unknown Heirs,* 113 Tenn., 298, 304, 86 S. W., 717; *State* v. *Lancaster,* 119 Tenn., 647, 105 S. W., 858, 14 L. R. A. (N. S.), 991, 14 Ann. Cas., 953. Moreover, it was not possible for the State to endow persons already dead with heritable blood, to the end that others might claim through them. *Turnmire* v. *Mayes,* 121 Tenn., 45, 114 S. W., 478. By the terms of the act it would be necessary to so endow a person already dead in order that any one could claim through him as his heirs on his mother's side.

In *Turnmire* v. *Mayes,* supra, it is said that it would be difficult to find a principle of law upon which it could be maintained that a statute conferring an inheritable quality upon a class of persons not possessing it before its passage could be held to vest it in an individual of that class who died before its enactment, and who was, "as to the acquisition of any right, as though he or she had never existed." 121 Tenn., 59, 114 S. W., 481. The second section of the act before us, therefore, could have no other effect than as a conveyance by the state of the title it had acquired through escheat to such persons as would answer the description of the

heirs of A. C. McCamey on his mother's side in the same way as if the said McCamey had been a legitimate instead of an illegitimate person. This view of the matter places in the clearest light and beyond any kind of controversy the proposition that the second section introduced a subject wholly foreign to the title.

In view of what has been last stated it is unnecessary to consider a contention made on the part of complainants to the effect that the act is remedial and the title should be construed liberally, so as to give it a retrospective as well as a prospective meaning. In addition to the fact that we do not think that such construction could be fairly given the title, added to the ineffectiveness of such construction, in view of what has been said upon the subject of the title's having already escheated to the State, we deem it proper to say that acts extending the right of inheritance to illegitimates are not regarded, in this State, as entitled to the favorable construction referred to. This is fully shown in the case of *Turnmire* v. *Mayes,* supra, on the last page of the opinion (121 Tenn., 63, 114 S. W., 482), and likewise in the case of *Laughlin* v. *Johnson,* 102 Tenn., 455, 461, 52 S. W., 816, 818. In the latter case, after stating that the common law must be allowed to stand unaltered as far as consistent with the reasonable construction of the new law, the court continued:

"In other words, the court would not go further in the recognition of inheritable blood for illegitimates than the legislature had unmistakably gone; and it being left in doubt, by the use of the terms in question, what

line of descendants would take under the conditions prescribed by that section, a construction was adopted which involved the least departure from the principles of the common law."

It is insisted in behalf of the complainants that the defendants are not entitled to make the question of unconstitutionality, under the familiar rule that the court will not hear any one make such a question who is not affected by the special objection raised. That rule does not apply in the present case, because the defendants are vitally interested, since, according to the allegations of the bill, the lands which defendants now claim were in fact the property of A. C. McCamey, and the complainants are his heirs, hence entitled to the land. But under the same bill they can be considered heirs only on the predicate that the act is constitutional. If the act is unconstitutional, they are defeated, and the defendants are successful rather than the complainants. The defendants are vitally interested in the question and clearly have the right to make it. The cases referred to by complainants' counsel do not bear upon this particular phase of the matter.

It is suggested by complainants that the act has been on our statute books a long time and has remained hitherto unchallenged, that perhaps numerous property rights have been based on it, and for that reason the court should not suffer its constitutionality now to be questioned, citing *Telephone Co.* v. *Telephone & Telegraph Co.*, 125 Tenn., 270, 141 S. W., 845, 43 L. R. A. (N. S.), 550. The present case does not fall under

the case cited, since it does not appear that the statute has ever been before the court or been acted on in any way. In the case referred to we carefully limited the doctrine. The same doctrine was stated in a later case in still narrower terms. *State, ex rel.,* v. *Baseball Club,* 127 Tenn., 294, 305, 154 S. W., 1151, Ann. Cas., 1914B, 1243.

The question now arises whether we shall declare the whole act unconstitutional or only the second section.

In *State* v. *Trewhitt,* 113 Tenn., 561, 571, 82 S. W., 480, it was held that where the matters not falling under the title is distinctly severable, and not so interwoven as that we can see the legislature would not have passed the act with that subject omitted, so much of the act may stand as falls under the title. This holding is fully in accord with the great weight of authority, as shown by the following excerpt from Cooley's Constitutional Limitations (5 Ed.), pp. 178, 179, and cases cited, viz.:

"If the title to the act actually indicates, and the act itself actually embraces, two distinct objects, when the constitution says it shall embrace but one, the whole act must be treated as void, from the manifest impossibility in the court choosing between the two, and holding the act valid as to the one and void as to the other.

"But, if the act is broader than the title, it may happen that one part of it can stand because indicated by the title, while, as to the object not indicated by the title, it must fall. Some of the State constitutions, it will

be perceived, have declared that this shall be the rule; but the declaration is unnecessary, as the general rule that so much of the act as is not in conflict with the constitution must be sustained would have required the same declaration from the courts. If by striking from the act all that relates to the object not indicated by the title, that which is left complete in itself, sensible, capable of being executed, and wholly independent of that which is rejected, it must be sustained as constitutional. The principal question in each case will therefore be whether the act is in truth broader than the title; and, if so, then whether the other objects in the act are so intimately connected with the one indicated by the title that the portion of the act relating to them cannot be rejected, and leave a complete and sensible enactment which is capable of being executed."

In Black's Constitutional Law the point is thus stated:

"Where the act is broader than its title, the portion in excess of the title will be declared void, if this can be done without destroying the rest of the enactment, as where the title of the act relates to 'all citizens' and the body of the act to 'all persons.' In such a case, in order to entitle a party to the benefit of the act, it must be alleged and proved that he is a citizen. If the act embraces distinct subjects which are not expressed in the title, and also subjects which are expressed in the title, it is void as to the former, but not necessarily void as to the latter. It is then subject to the rule that an act unconstitutional in part will not be declared void

*in toto* if the valid portions 'are separable from the void provisions and capable of enforcement, independently of such void provisions, unless it shall appear that all of the provisions of the act are so dependent on each other, operating together for the same purpose, or are otherwise so connected together in meaning, that it cannot be presumed that the legislature would have passed the one without the other provision. And where the title embraces two objects, and the act embraces two subjects, so that it is impossible to tell which object was intended by the legislature, the courts are not at liberty to select one object and sustain the law as to that alone; the whole act must fall.''

We have several cases prior to *State, ex rel.,* v. *Trewhitt* which hold that the whole act is void when in violation of the section of the constitution referred to. Among these are *Cannon* v. *Mathes,* 55 Tenn. (8 Heisk.) 504; *State of Tennessee, ex rel.,* v. *McCann,* 72 Tenn. (4 Lea), 1; *State, ex rel.,* v. *Schlitz Brewing Co.,* 104 Tenn., 715, 59 S. W., 1033, 78 Am. St. Rep., 941, and cases cited. While these cases state broadly the conclusion that the whole act is void, yet in none of them did the court have under consideration the question of separating a part of the act on the principles suggested in *State, ex rel.,* v. *Trewhitt.*

We have numerous cases on the subject of exscinding parts of a statute. These are referred to in *Malone* v. *Williams,* 118 Tenn., at page 439, 103 S. W., 798, 121 Am. St. Rep., 1002, and, since that case was published, the case of *Richardson* v. *Young,* 122 Tenn., 471, 523,

524, 125 S. W., 664. These cases all recognize the right of the court to exscind, so to speak, from an act an unconstitutional section, provided it is not so interwoven with the rest of the act as that the court can see that the legislature would not have passed it with that provision left out. The cases last referred to, however, each had under consideration some provision void because of the violation of some other section of the constitution, not section 17 of article 2. The cases of *State, ex rel.,* v. *Trewhitt,* supra, *State* v. *Hayes,* 116 Tenn., 40, 50, 93 S. W., 98, and *State, ex rel.,* v. *Taylor,* 119 Tenn., 229, 256, 257, 104 S. W., 242, are the only ones in which this application of the doctrine has been made, but, as already shown, these cases are in harmony with the great weight of authority, and are not in conflict with any authority in this State, wherein the particular phase of the question was examined or considered. The reason of the decision is fully stated in the excerpt which we have reproduced from Cooley's Constitutional Limitations, and we need not go further into this matter. We are of the opinion, therefore, that the first section of the act may stand as being in harmony with the title.

The constitutionality of the act is attacked in the present case on the ground that it was not passed with the formalities required by the constitution. We have not considered it necessary to pass on that question.

Before closing the opinion it is proper to say that we have treated the words in the title of the act referring to "section 2423 of T. & S. Code" as mere sur-

McCamey v. Cummings.

plusage; that publication being of the same kind, and having no greater legal standing than those referred to in *Railroad* v. *Maxwell,* 113 Tenn., 480, 82 S. W., 1137.

It results that the chancellor's decree dismissing the bill must be affirmed, with costs.