PENN-DIXIE CEMENT CORP. *v.* KIZER, Commissioner of Finance & Taxation, *et al.*

(*Nashville,* December Term, 1951.)

Opinion filed July 11, 1952.

Appeal to U. S. Supreme Court dismissed Nov. 24, 1952.

CHARLES C. MOORE, of Chattanooga, for appellant.

ROY H. BEELER, Attorney General, ALLISON B. HUMPHREYS, Solicitor General, and WILLIAM F. BARRY, Assistant Attorney General, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The Penn-Dixie Cement Corporation filed its original bill in the Chancery Court at Nashville seeking to recover the sum of $21,152.03 which was paid to the Commissioner of Finance and Taxation under protest in August, 1951, as an additional excise tax for the privilege of doing business in corporate form in Tennessee during the year,

1950. The said tax was assessed and collected pursuant to the provisions of Chapter 6 of the Public Acts of 1951, the same being an amendment to Section 1316 of the Official Code of Tennessee of 1932 and generally known as the "Corporation Excise Tax Law". It was passed on January 31, 1951, and took effect "from and after its passage".

A brief summary of the provisions of the original Act and its administration by the Department of Finance and Taxation is deemed necessary to a clear understanding of the questions involved in the present litigation.

The original excise tax law was Chapter 21, Public Acts of 1923, Code, Sec. 1316 et seq., and was enacted on February 16, 1923. The first tax payable under this statute became due July 1, 1923, or four and one-half months after its passage. The tax assessed was for the privilege of doing business in Tennessee, and was measured by the corporation's net earnings for the preceding year. The Act provides: "The tax hereinabove imposed shall be due and payable on July 1st, 1923, and on July 1st of each succeeding year".

The Act assailed in this case upon grounds of unconstitutionality reads as follows:

"An Act to amend Section 1316 of the Official Code of Tennessee of 1932, the same being a part of what is known as the 'Corporation Excise Tax Law,' originally enacted as Chapter 21 of the Public Acts of 1923, and entitled: 'An Act to impose an excise tax upon all corporations and joint stock associations organized for profit under the laws of Tennessee, and those organized under laws of other states and counties and doing business in Tennessee.'

"Section 1. *Be it enacted by the General Assembly of the State of Tennessee,* That Section 1316 of the

Official Code of Tennessee of 1932, the same being a part of what is known as the 'Corporation Excise Tax Law,' be and the same is hereby amended by adding, after the first paragraph thereof, the following:

" 'In computing the net earnings subject to excise taxation under this Act there shall be no deduction for any taxes on, or according to, or measured by income, profits, earnings, or excess profits imposed by authority of the Government of the United States of America, or by authority of any foreign government.'

"Sec. 2. *Be it further enacted,* That this Act shall take effect from and after its passage, the public welfare requiring it; and that all taxes due on or after July 1, 1951, shall be computed in accordance herewith."

The original bill charges that the said exaction of $21,152.03 was unjust, illegal and contrary to the Constitution and laws of the State of Tennessee; that the construction placed upon the Act by the Commissioner was erroneous "in that he construed the said Act to retrospectively impose upon corporations additional excise tax for the year 1950"; that such construction would make the Act unconstitutional under Section 20, Article 1, of the Constitution of Tennessee, and in violation of Section 28, Article 2, of the Constitution of Tennessee. The bill was amended so as to charge that the Act as construed by the Commissioner violates Section 20, Article 1, and Section 17, Article 2, of the Constitution of Tennessee and the Fourteenth Amendment to the Constitution of the United States. The original bill and amendment thereto fail to charge any specific ground of unconstitutionality other than the Commissioner illegally con-

strued it retroactively and imposed the tax for the year 1950, when it is claimed the tax was not due.

The State Commissioner of Finance and Taxation filed an answer denying that the tax was illegal and in violation of the Constitution.

"Answering further, the defendant avers that the Legislature of 1951 enacted Chapter 6 of the Public Acts of 1951, which amended what is known as the 'Corporation Excise Tax Laws'. The effect of the amendment was to deny to corporations the deduction of federal income taxes in computing net earnings, subject to the Tennessee excise tax. The statute likewise provided that all taxes due on or after July 1, 1951, be computed in the manner required by the Act. Chapter 6 of the Public Acts of 1951 became effective on February 1, 1951."

The answer further denied "that Chapter 6 of the Public Acts of 1951 offends against any provision of the Constitution of Tennessee or the Constitution of the United States." The answer of the Commissioner reviews in some detail the interpretation of the original Act by the Courts, both the Chancery Court and this Court, and the opinions of the Attorney General of the State, as well as the administration of the law. The Chancellor heard the case on bill and answer, and certain stipulations, and dismissed the bill.

It is now before us for review under the following assignments of error:

1. "The Chancellor erred in holding that the additional excise tax imposed on this appellant for the year 1951, by Ch. 6 of the Public Acts of 1951, was due and collectible at the time this appellant was forced to pay same, and denying relief on that

ground because appellant's 1951 fiscal year did not expire until December 31st, 1951, and the excise tax law expressly provided that the tax imposed was not due and payable until July 1st of the year succeeding the year for which it was imposed.''

2. ''The Chancellor erred in holding that the excise tax sued for in this case was collected for the exercise of the privilege of doing business in corporate form in Tennessee for the current year of 1951, and not for the preceding year 1950, because

\*　　　\*　　　\*　　　\*　　　\*　　　\*

'' (b) The excise tax law imposes the tax on net earnings for the preceding fiscal year and makes the tax imposed due and payable on July 1st of each succeeding year. This provision is not changed by the Amendment of 1951.''

3. ''The Chancellor erred in denying relief to appellant and dismissing its bill because

'' (a) As construed and applied by the Commissioner of Finance and Taxation, this Ch. 6 of the Public Acts of 1951 took from appellant $21,152.03 of its property and bestowed same upon the State of Tennessee in violation of Sec. 20, Art. 1 of the Constitution of Tennessee, which prohibits retrospective legislative laws that disturb vested rights.''

4. The Chancellor erred in denying appellant relief because Chapter 6, Public Acts of 1951, imposed a tax upon corporations in Tennessee which ''reduces by several million dollars the income tax which the United State can collect from such corporations under the Constitution and laws of the United States'', and is void for that reason.

5. The Chancellor erred in dismissing the bill because Chapter 6, Public Acts of 1951, as construed by the Commissioner is so "oppressive and arbitrary as to be a denial of due process" under the Fourteenth Amendment to the Constitution of the United States.

The first three assignments of error relate to the alleged illegal construction of the statute by the Commissioner in that he applied it retroactively in violation of Section 20, Article I of the Constitution "which prohibits retrospective legislative laws that disturb vested rights". The constitutional provision thus referred to provides: "That no retrospective law, or law impairing the obligations of contracts, shall be made." In *Shields* v. *Clifton Hill Land Co.,* 94 Tenn. 123, 147-148, 28 S. W. 668, 674, 26 L. R. A. 509, it is said:

"The constitutional provision upon which this contention is made is as follows: 'That no retrospective law, or law impairing the obligation of contracts, shall be made,' Const. Tenn., art 1, Sec. 20. This does not mean that absolutely no retrospective law shall be made, but only that no retrospective law which impairs the obligation of contracts, or divests or impairs vested rights, shall be made."

The alleged retroactivity of the original Act of 1923 was considered in *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn. 569, 260 S. W. 144. The Act was passed in February, 1923, and the first tax assessed and collected was for 1923, the same being due and payable on July 1st of that year. A number of bills had been filed all making the contention of invalidity as being in violation of Section 20, Article I of the Constitution. The cases were consolidated and heard by both of the Chancellors of Davidson County, Hon. John R. Aust and Hon. James

B. Newman, who were conceded to be two of the ablest jurists in Tennessee. In disposing of this contention the Chancellors held, as follows:

"While the point was not pressed in oral argument, yet some of the bills raise the point that the Act is retrospective and is an ex post facto law.

"First, we may say here there is no part of the Act which, in our opinion, has a retrospective effect. The law was passed and approved in February, 1923, and imposes the tax for that and all subsequent years. The tax for 1923 is due and payable July 1st, 1923, and on July 1st in all subsequent years. True, the Act makes the measure of the tax due in any one year a per centum of the net earnings for the preceding year, but we can perceive nothing in that fact which makes the Act retroactive.

"Second, it has been repeatedly held in this State that the Constitution, Art. I, Sec. 20 forbidding retrospective laws, means only that no retrospective law which impairs the obligation of a contract or divests or impairs vested rights shall be passed. *Shields* v. *Clifton* [*Hill*] *Land Co.*, 94 Tenn. [123] 148, [28 S. W. 668, 26 L. R. A. 509] citing State and Federal Cases.

"As the Act neither impairs the obligation of contracts, nor affects vested rights, it does not fall within the inhibition of either the State or National Constitutions."

Some of the defendants appealed from this decision. It does not appear from the assignments of error that able counsel for the appellants questioned the correctness of the Chancellors' opinion. This Court made no comment

on this ground of the original bill but held that Chapter 21 of the Public Acts of 1923 was constitutional.

There appeared to be a degree of ambiguity in the original excise tax act with respect to the tax period for which the payment is made on July 1st of each succeeding year. This we think was fully clarified in *Reynolds Tobacco Co.* v. *Carson,* 187 Tenn. 157, 213 S. W. (2d) 45, to which we shall refer later on in this opinion.

The Chancellors in their joint opinion in the Senter case held that the payment was made for the calendar year in which the payment was made. In 1937, Mr. Edwin F. Hunt, an able lawyer and Assistant Attorney General of the State, ruled that the payment was made for the privilege of doing business during the ensuing year. In 1945, Mr. William F. Barry, Solicitor General of the State, and a lawyer of outstanding ability, ruled that the payment was for the privilege of doing business during the twelve months' period ending June 30th next preceding the payment date of July 1st. The Chancellor in the case at bar adopted the view expressed in the Hunt opinion.

It is argued by appellant's counsel, and other counsel who have filed briefs as *amici curiae,* that since the taxpayer's corporate year, or fiscal year, had closed at the time of the passage of Chapter 6, Acts of 1951, that the said Act must be construed as being retroactive in order to make it applicable to the appellant, and that if this is done the Act is unconstitutional.

The apparent uncertainty in administering this taxing statute arises from the fact that the "fiscal year" of corporations does not always coincide with the "tax year". The tax to be collected is of necessity measured by reference to the corporation's net earnings during the

preceding fiscal year. It could not possibly be otherwise. Moreover the statute provides that the excise tax shall be due and payable on July 1st, which justifies the conclusion that it refers to taxes that are computable for the year next preceding that date.

While the question now before us was not expressly decided in *Reynolds Tobacco Co.* v. *Carson,* supra, we think it was definitely held that taxes "due and payable" on July 1st of each succeeding year refer to and are measured by "net profits" as shown in the return by the taxpaying corporation for the year preceeding July 1st. Under Code Section 1248.146 every corporation liable for the tax is required to file a report, duly verified, giving a detailed statement of its earnings, net profits, etc. It is further provided: "The tax herein levied shall be paid to the commissioner of finance and taxation *on or before* July 1st of each year and *shall be paid at the time the sworn report is filed."* (Emphasis supplied). The taxpayer in the case at bar was thus required to file a sworn report of its taxable earnings which had accrued prior to July 1, 1951, and subject to the provisions of Chapter 6 of the Public Acts of 1951.

Adverting to the conflicting opinions issued from the office of the State Attorney General, the first by Hunt ruling that the Act was prospective in effect and the second by Barry that "a corporation pays on July 1 for a privilege already exercised and for the full and actual period of its previous existence", we adopt the latter view as the opinion of the Court. There is no contention that the taxpayer's annual tax has been increased by the change of opinion. The increase in the amount of the tax is due entirely to the statutory method of computing the tax, which under the Amendatory Act of 1951, dis-

allows the taxpayer the right to deduct its Federal Income tax from the State's Excise tax.

██ The underlying reason for the enactment of the amendatory Act herein assailed is that the Federal Congress had under consideration, or had actually passed, a revenue bill increasing income taxes, and more especially "excess profits" taxes upon corporations. In order to provide against loss of State revenue by allowing corporations to deduct the amount of Federal taxes from State Excise taxes it became necessary to pass the Act of 1951. Contention is made by appellant that the Act is not only void as being retroactive in effect but violates "due process" under the Federal Constitution. We cannot sustain either of these contentions as being sound.

██ ██ Conceding that the Act is in a degree retroactive, or retrospective, this does not in and of itself render it invalid, since in our opinion it does not impair the obligation of a contract or operate to divest rights to any vested interest. Taxing statutes are generally held to be constitutional even though they have some retroactive effect. *Millikin* v. *U. S.*, 283 U. S. 15, 21, 51 S. Ct. 324, 75 L. Ed. 809 and *Welch* v. *Henry*, 305 U. S. 134, 59 S. Ct. 121, 118 A. L. R. 1142.

██ "Mere retroactivity of a statute affecting taxation does not render it unconstitutional; such a statute is valid if it is not arbitrary, and does not disturb vested rights, impair contractual obligations, or violate due process." 16 C. J. S., Constitutional Law, Sec. 419.

"An income tax law is generally not unconstitutional because retrospective, and it may validly apply to the year in which enacted, or to prior, but recent, transactions; * * *.

"Generally, an income tax law is not unconstitutional merely because of its retrospective operation, especially where such laws only affect deductions that may be taken from income, which are matters of legislative favor; and it has been said that some provisions in almost every income tax statute have been retroactive for reasonable periods." 16 C. J. S., Constitutional Law, Sec. 419 (b); 146 A. L. R., Constitutionality of retroactive tax statute, page 1012; and "Income Taxes", 27 Am. Jur., Sec. 27.

The foregoing texts are supported by decisions from quite a number of foreign jurisdictions. In our own case of *McCord* v. *Southern Ry. Co.,* 187 Tenn. 247, 248, 213 S. W. (2d) 184, 185, it is said: "There is no vested right in an assessment for taxes." See also *Mengel Box Co.* v. *Stevens,* 141 Tenn. 373, 376, 210 S. W. 635, 636, where it was held:

"By the payment of the sum exacted of it in 1899, the complainant merely obtained license to do business in this state. The state was not cut off from imposing a higher license or from changing its method of privilege or excise taxation. This is what the state has done."

We find no merit in the appellant's contention that as construed by the Commissioner, the Act contains two subjects in violation of Section 17, Article 2 of the Constitution of Tennessee. The case of *McCamey* v. *Cummings,* 130 Tenn. 494, 172 S. W. 311 has no application here. The appellant insists in further support of the second assignment of error that the Chancellor was not at liberty to construe the Act and find that the payment made on July 1, 1951, was for the ensuing tax year. We find it unnecessary to respond to this contention. Regard-

less of whether the Act be construed as retrospective or prospective in its application we think it is constitutional based upon the authorities cited in this opinion. However, we think the record requires a decision upon the question presented, and it is our well considered opinion that the Chancellor was correct in holding that the tax was due. We are also of opinion that the question of the year for which the tax in question is paid is a matter of statutory construction and is a question of law.

The fourth assignment of error complains that the tax in question "is subversive of the powers and repugnant to the paramount authority of the United States" and is void for that reason. The argument is made that it is a State tax upon a Federal tax and thus imposes a burden upon the Federal Government. To this we cannot give our assent for the reason the State tax is a tax upon net earnings with a disallowance of taxes. It is not a tax upon a tax. The deduction which is disallowed in computing the amount of tax that is due and collectable is expressly authorized by the statute and not pursuant to an administrative ruling. It does not interfere with the Federal power to tax.

There is a stipulation in the record to the effect that there are thirteen (13) states which impose a tax upon corporate income and do not allow any deduction of Federal taxes in computing the amount of the tax that is due. If the Federal Government fails to intervene and protest against this alleged unconstitutional invasion of its sovereignty the appellant is not privileged to make the point to protect its own financial interest.

We find no merit in the fifth assignment of error complaining that the tax as construed by the Commissioner is "so oppressive and arbitrary" as to be a denial

of due process under the Fourteenth Amendment of the United States Constitution. The Federal decisions cited on the appellant's brief, *Nichols* v. *Coolidge,* 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, and others do not control the question before us. On the contrary the case most applicable and controlling, as pointed out by opposing counsel, is *United States* v. *Hudson,* 299 U. S. 498, 500, 57 S. Ct. 309, 310, 81 L. Ed. 370, wherein it is said:

"As respects income tax statutes, it long has been the practice of Congress to make them retroactive for relatively short periods so as to include profits from transactions consummated while the statute was in process of enactment, or within so much of the calendar year as preceded the enactment; and repeated decisions of this Court have recognized this practice and sustained it as consistent with the due process of law clause of the Constitution."

The assignments of error are overruled and the Chancellor's decree is affirmed.