BILTMORE HOTEL COURT, INC., et al., Appellants,

***v.***

CITY OF BERRY HILL, Appellees.

390 S.W.2d 223.

(*Nashville,* December Term, 1964.)

Opinion filed May 7, 1965.

Douglas M. Fisher, John J. Hollins, Thomas M. Evans, Wirt Courtney, Jr., Nashville, for appellants.

John M. Grissim, Cecil Sims, Nashville, for appellees.

Mr. Justice Holmes delivered the opinion of the Court.

This is an appeal by the complainants from a decree of the Chancery Court of Davidson County sustaining

the demurrer filed by the defendant to the original bill of complainants. The bill, insofar as material to the questions raised by the assignments of error, alleges that the complainants are the owners of certain personal property located within the city limits of the City of Berry Hill, which is a municipal corporation created and operating under the authority of T.C.A. Title 6, Chapters 18-23. On October 2, 1963 the Commissioners of the City of Berry Hill enacted an ordinance which levied a tax on personalty in that city in the amount of $1.50 on each $100.00 assessed value for the year 1963. The bill alleges this ordinance is void because (a) it was amended on the third and final reading contrary to the requirements of T.C.A. sec. 6-2026, (b) the ordinance seeks to impose a tax predicated upon business records of the taxpayer for the year 1963 although the ordinance was not passed until October 1963 and retroactively required the keeping of records by the complainants for the months of January through September 1963, (c) the ordinance seeks to impose a tax retroactively, which the City of Berry Hill has no power to do, (d) under T.C.A. sec. 6-208 the City of Berry Hill, a municipality having fewer than 5,000 inhabitants, has authority to levy a maximum tax of $7\frac{1}{2}$ mills on the dollar, and the ordinance seeks to set a tax rate of 15 mills on the dollar. The bill further states:

"Complainants have sought and will continue to seek such administrative relief as is provided by law, but they aver that such relief would be inadequate to secure their rights under the law."

It is further alleged that the assessments made by the City of Berry Hill under the ordinance of October 2, 1963 are void for the following reasons:

(a) The assessments were made on a completely arbitrary and capricious basis without knowledge of the value of the property assessed, without inspection of it by the Tax Assessor, without reference to the assessment made by the County Assessor upon the same property, and without information from complainants as to the value of the property or as to the amount of insurance carried on such property, all in violation of complainants' rights.

(b) The City of Berry Hill through its agents has reduced the assessments on real property of home owners in that municipality for the express purpose of insuring that home owners would not be required to pay any substantial increase in property tax under an increased rate of taxation sought to be imposed by 1963 ordinances on real property, that complainants are entitled to have their personal property assessed upon the same basis of value as real property is assessed in Berry Hill. The bill further states that the City of Berry Hill and its agents have concocted and sought to carry out an intentional, deliberate, wilful scheme to impose upon complainants a disproportionate burden of taxation in violation of the rights of complainants under the United States Constitution and the Constitution of Tennessee.

(c) On behalf of the complainant Third National Bank in Nashville, it is averred "that the Tax Assessor of the City of Berry Hill has no authority whatever to assess its personal property, the method for so doing being set out in Sec. 67-719, Tenn. Code Ann."

. · The complainants' bill then states that subsequent to the due date of the tax complained of, and within thirty days prior to the filing of the bill, each complainant paid the tax complained of under protest. The bill prays for an injunction restraining the City of Berry Hill and its servants:

"* * * from the use of the void assessments complained of in an attempt to collect or enforce the personalty tax for 1963 and from the use of void assessments at any future time as a measure of complainants' tax liability; from engaging in any further attempt to tax the merchants and business men of the City of Berry Hill, who are complainants, at a rate of assessment higher than that imposed upon real property in the City of Berry Hill; from taking any further steps to collect any tax under Ordinance No. 100."

The bill further prays for a declaratory judgment declaring the ordinance of October 2, 1963 void and that complainants have and recover from the City of Berry Hill the taxes paid under protest together with interest and costs.

The demurrer of the defendant first questions the right of complainants to maintain the action and next states that T.C.A. sec. 6-208 has no application to the City of Berry Hill and then states that the bill fails to state a cause of action "whether under the Declaratory Judgments Law, or the right of a taxpayer to recover taxes illegally paid" and sets forth the reasons defendant contends the bill fails to state a cause of action.

We shall first consider the grounds upon which complainants assert the ordinance levying the personalty tax for the year 1963 is void. The first of these is that the

ordinance was amended on third and final reading contrary to the requirements of T.C.A. sec. 6-2026. The bill does not state in what particular the ordinance was amended. The record contains a photographic copy of the ordinance which levies the personalty tax complained of, together with a stipulation entered into between the parties that it is a true and accurate copy of this ordinance. This photographic copy shows that the ordinance passed first reading on September 11, 1963, passed second reading September 16, 1963, and passed third reading October 2, 1963 and does not indicate that it was at any time amended. T.C.A. sec. 6-2026 provides in part:

"Every ordinance shall be read three (3) different days in open session before the adoption, and not less than one (1) week shall elapse between first and third readings, and any ordinance not so read shall be null and void."

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"No ordinance making a grant, renewal, or extension of a franchise or other special privilege, or regulating the rate to be charged for the service by any public utility shall ever be passed as an emergency ordinance. No ordinance shall be amended except by a new ordinance."

The briefs of counsel refer to no cases construing T.C.A. sec. 6-2026, and our investigation has revealed none. We find similar statutes prescribing the manner in which ordinances shall be passed in a number of states. The Kentucky Court had occasion to construe such a statute in *Farnsley v. Henderson*, (Ky.) 240 S.W.2d 82, 84, in which the Court stated:

"* * * The purposes of KRS 83.090 are to prevent hasty and unconsidered action on the part of the Board; to afford time to study the ordinance and make recommendations in respect thereto; and to give notice to the public to enable it to take whatever legal steps it may desire in furtherance of or protest to the enactment of it."

\* \* \* \* \* \* \* \* \* \*

"What constitutes a material or substantial change in an ordinance between the date of its first and final enactment is dependent upon the circumstances of each .case. If nothing new is added to it, or if what is taken from it does not render it misleading in its fundamental content when passed, such alteration will not be so material or substantial as to characterize the ordinance in its final form a different instrument from that introduced. * * *"

In holding that minor or formal changes made in a zoning ordinance upon its third reading did not invalidate the ordinance, the Iowa Court, in *Brackett v. City of Des Moines,* 246 Iowa 249, 67 N.W.2d 542, 546, stated:

"Section 366.3, Code of Iowa 1954, I.C.A., provides ordinances shall be fully and distinctly read on three different days, etc. Plaintiff's petition alleges the new zoning ordinance is invalid because of amendments adopted on its third reading. No decision of this court upon this point has been called to our attention. McQuillin on Municipal Corporations, 3rd Ed., section 16.87 states an amendment which does not change the general purpose of an ordinance may be made during its passage. In this case the changes made were minor or formal. They do not change the general purpose of

the ordinance nor do they affect plaintiff's property. * * *,,

See also *Community Home Builders v. Town Council,* 83 R.I. 49, 117 A.2d 544, 546, and *Gilman v. Newark,* 72 N.J.Super. 562, 180 A.2d 365, 369.

█ Assuming without deciding that the last sentence in T.C.A. sec. 6-2026 quoted above relates to the amendment of proposed ordinances prior to their final passage and not to the amendment of ordinances which have already been legally enacted as such, that sentence does not require the passage of a completely new ordinance when only minor or formal changes are made on the third reading of a proposed ordinance. In the absence of averment as to the nature and character of the amendment alleged to have been made on third reading of the ordinance in question, we cannot assume that the amendment was of such a character as to render the ordinance void. In the absence of a showing that the amendment made a material or substantial difference in the ordinance, it is our duty to presume the City Commissioners acted legally and passed the ordinance in conformity with the statute. *Walldorf v. City of Chattanooga,* 192 Tenn. 86, 91, 237 S.W.2d 939.

█ It is next asserted that Ordinance 100, passed on October 2, 1963, is invalid because it imposed tax retroactively and retroactively required the keeping of records by complainants, and that the ordinance levying the tax, therefore, contravenes Article 1, Section 20 of the Tennessee Constitution. Section 3 of the ordinance in question provides:

"Reporting an assessment of said personalty tax shall be, and the same is hereby, to be reported and assessed

in the same manner as set forth as to ad valorem taxes in Ordinance No. 99 in the Ordinance of said City.''

Ordinance 99 levies a merchants ad valorem tax and provides that merchants shall be taxed as set out in T.C.A. sec. 67-4702, except that the statement required to be filed by the merchant shall be filed with the Tax Assessor of the City of Berry Hill on or before January 15 each year, the statement for 1963 to be filed on or before January 15, 1964.

The constitutional provision relied upon by appellants was construed by the Court in *Shields v. Clifton Hill Land Co.,* 94 Tenn. 123, 147, 148, 28 S.W. 668, 674, 26 L.R.A. 509, in which it is stated:

"The constitutional provision upon which this contention is made is as follows: 'That no retrospective law, or law impairing the obligation of contracts, shall be made.' Const.Tenn., art. 1, sec. 20.

"This does not mean that absolutely no retrospective law shall be made, but only that no retrospective law which impairs the obligation of contracts, or divests or impairs vested rights, shall be made. * * *''

The reasoning of the Court in *Penn-Dixie Cement Corp. v. Kizer,* 194 Tenn. 412, 250 S.W.2d 904, fully answers the contentions of appellants. There, the Court stated.

"Conceding that the Act is in a degree retroactive, or retrospective, this does not in and of itself render it invalid, since in our opinion it does not impair the obligation of a contract or operate to divest rights to any vested interest. Taxing statutes are generally held to be constitutional even though they have some

retroactive effect. *Millikin v. U. S.,* 283 U.S. 15, 21, 51 S.Ct. 324, 75 L.Ed. 809 and *Welch v. Henry,* 305 U.S. 134, 59 S.Ct. 121, 118 A.L.R. 1142.

" 'Mere retroactivity of a statute affecting taxation does not render it unconstitutional; such a statute is valid if it is not arbitrary, and does not disturb vested rights, impair contractual obligations, or violate due process.' 16 C.J.S., Constitutional Law, sec. 419." 194 Tenn. at 424, 250 S.W.2d at 909.

■ Appellants next assert that the ordinance setting a tax rate of 15 mills on the dollar is void because, under the provisions of T.C.A. sec. 6-208, a tax of 7½ mills on the dollar was the maximum the City of Berry Hill was authorized to levy. The bill alleges that the City of Berry Hill was created and is operating under the authority of Chapters 18-23 of Title 6 of the Tennessee Code Annotated. It, therefore, does not derive any of its powers from T.C.A. Title 6, Chapter 1. By the terms of T.C.A. sec. 6-201, "All municipalities organized or amending their charters, under chapter 1 of this title, shall be controlled by and subject to the limitations and restrictions of this chapter." Since this Code Section expressly provides that the limitations and restrictions of T.C.A. Title 6, Chapter 2, are applicable only to corporations organized or amending their charters under T.C.A. Title 6, Chapter 1, the limitation on the authority to levy taxes imposed by T.C.A. sec. 6-208 can have no application to the City of Berry Hill, which derives its authority from Chapters 18-23 of Title 6 of the Tennessee Code Annotated.

■ T.C.A. sec. 6-208 came into the law as Section 21 of Ch. 92, Acts 1875. T.C.A. sec. 6-201 was Section 32 of that same Act. The limitations imposed by Ch. 92, Acts

1875 have application to municipal corporations deriving their authority from that Act and have no application to municipal corporations deriving their authority from entirely independent statutes.

It is further contended that the Tax Assessor has no authority to assess the personal property of the complainant Third National Bank in Nashville by reason of the provisions of T.C.A. sec. 67-719.

T.C.A. sec. 67-715 provides that the shares of stock of stockholders in any bank and of certain other corporations shall be assessed and taxed for state, county and municipal purposes as the personal property of the stockholders, provided, however, the assessment of such shares of stock as the property of the stockholders shall be in lieu of any assessment or taxation of the capital stock on corporate property of such corporation.

By the terms of T.C.A. sec. 67-716, the shares of stock assessable under sec. 67-715 "shall be assessed at the actual cash value of same less the assessed value of realty and value of personal property otherwise assessed or returned for taxation," etc.

It is then provided in T.C.A. sec. 67-717:

*"Real estate and personal property of any corporation, company or association defined in sec. 67-715 shall be assessed in the same manner, and where situate, as other real estate and personal property;* but in computing the assessable value of such shares of stock the assessed value of the realty and the value of personal property otherwise assessed or returned for taxation shall be deducted from the value of the shares of stock and the remaining value constitute the value upon

which the assessment shall be made." (Emphasis supplied)

■ T.C.A. sec. 67-719 relates to the assessment of bank stock of banks which have branches. As shown above, the statutes which levy the tax on bank stocks expressly provide that the real estate and personal property of such banks shall be assessed in same manner and where situate as other real estate and personal property. The provisions of T.C.A. sec. 67-719 do not impose a limitation upon the authority of the City of Berry Hill to levy a personal property tax on the personal property of a bank within its corporate limits.

· ■ Having reviewed the authorities cited in the briefs and made independent investigation, it is our conclusion that the ordinance of the City of Berry Hill enacted October 2, 1963, which levies a tax on personalty within that city, is valid.

We shall next consider the assignments of error which question the legality of the assessments made by the City Tax Assessor.

Section 4 of the ordinance provides:

"* * * that any person dissatisfied with his assessment may have the same reviewed by the Board of Equalization of the City of Berry Hill if he files a written demand for said review with the tax assessor of said City within thirty (30) days from the date of his assessment."

The bill does not allege that the complainants, within thirty days from the date of the assessment, filed a written demand for review of the assessment by the Board of Equalization of the City of Berry Hill as required by

the above quoted section of the ordinance. As heretofore stated, the bill merely alleges that "complainants have sought and will continue to seek such administrative relief as is provided by law, but they aver that such relief would be inadequate to secure their rights under the law." The bill does not allege any facts to support the conclusion that a review by the Board of Equalization would be inadequate.

As stated in *H. T. Hackney Co. v. Robert E. Lee Hotel,* 156 Tenn. 243, 252, 300 S.W. 1.:

"The demurrer only admits the truth of facts stated in the bill; it does not admit the intendments and bare inferences that may be drawn from the facts nor conclusions of law that arise upon the undisputed facts."

See also *Parks v. Margrave,* 157 Tenn. 316, 324, 325, 7 S.W.2d 990, and *Oman Construction Co. v. Tennessee Central Railway Co.,* 212 Tenn. 556, 570, 370 S.W.2d 563.

The effect of the failure of complainants to demand a review by the Board of Equalization of the assessment made by the Assessor, and secure the action of that Board, when such right is given to them, is stated in *Ward v. Alsup,* 100 Tenn. 619, 46 S.W. 573, as follows:

"It has been held that when, by a valid statute, a board of assessors or equalizers is created with power to act, a taxpayer who fails to make application to such board for relief when it has power to act cannot pay under protest, and then recover back the tax in an action for that purpose. It is said to be everywhere a settled rule that application must be made to the statutory tribunal provided for that purpose, if one is provided, before any legal action is taken to recover back the tax." 100 Tenn. at 745, 46 S.W. at 575.

In *State ex rel. Anderson County v. Aycock,* 193 Tenn. 157, 245 S.W.2d 182, the Court had occasion to consider the holding in the Ward case. In so doing, the Court stated:

"* * * The case of *Ward v. Alsup,* supra, is not in point because in that case the taxpayer paid under protest the State Ad Valorem taxes assessed against his real estate and then sued under Code Section 1790 et seq. to recover back the taxes upon the theory that the assessment was void because railroad companies and telegraph companies etc., were assessed at much less than their actual value, whereas his property was assessed at its full value, thus resulting in an inequality which rendered his assessment void. All this Court held in *Ward v. Alsup,* supra, was that the taxpayer as a condition precedent to maintaining such a suit, must first follow the procedure then available to him by statute of appealing to the proper assessing authorities for an equalization of assessments." 193 Tenn. at 163, 245 S.W.2d at 185.

The rule requiring a taxpayer complaining of the amount of his assessment to exhaust his remedies before boards of equalization before invoking jurisdiction of the Courts is reiterated in the recent case of *Elliott v. Equalization Board,* 213 Tenn. 33, 37, 38, 372 S.W.2d 181.

In *Ward v. Alsup,* supra, the Court further stated:

"The rule is tersely stated in 25 Am. & Eng. Enc. Law, pp. 241-244, as follows: 'When provision is made for an application to a board of equalization or review for the correction of errors in an assessment, such remedy is exclusive; and a taxpayer failing to avail himself thereof, within the time prescribed, cannot prevent the col-

lection of a tax for any cause for which he might have had an abatement; but this rule does not apply when the tax is illegal by reason of want of power to levy or assess, nor where the assessment is fraudulent.' '' 100 Tenn. at 745, 746, 46 S.W. at 576.

An examination of the original text in 25 Am. & Eng. Enc. L., shows that the last clause in the above quotation, ''or where the assessment is fraudulent'', does not appear as a part of the text of that publication, but is taken from a footnote on page 244. As authority for the statement in the footnote, six cases are cited, three of which are from the State of Illinois. In the later Illinois case of *Bistor v. McDonough,* 348 Ill. 624, 181 N.E. 417, cert. den. 287 U.S. 641, 53 S.Ct. 90, 77 L.Ed. 555, the Illinois Court held:

''The statutory provisions concerning the taxpayer's right to have the assessors' valuation of his property for taxation reviewed by the board of review are intended to provide adequate protection against fraudulent or oppressive assessments. It is only where a valuation of taxable property has been fraudulently made and the complaining taxpayer has not waived his right to relief that the assessment is subject to judicial review. *The jurisdiction of a court of equity may not be invoked against a fraudulent assessment of taxable property where the owner has failed to insist upon a legal remedy,* which would have afforded him complete relief. He must show that he has been diligent in pursuing his remedy to have the assessment corrected by the board of review or that he was prevented from pursuing such remedy by fraud, accident, or mistake. (Citing cases) Upon the neglect or refusal of the board to review the assessment, the owner's remedy is manda-

mus to compel the board to act, and he must pursue that remedy before seeking relief by injunction.'' (Emphasis suplied)

In a comprehensive law review article which appeared in 1930, Stason Judicial Review of Tax Errors—Effect of Failure to Resort to Administrative Remedies, 28 Mich. L.Rev. 637, it is pointed out that since the 1924 decision of the United States Supreme Court in *First National Bank of Greeley v. Board of County Commissioners of Weld County,* 264 U.S. 450, 44 Sup. Ct. 385, 68 L.Ed 784, in many jurisdictions, it has been held that the intentional, purposeful and systematic overvaluation and discrimination in the assessment of taxes will not render unnecessary an exhaustion of the right to have the assessment reviewed by a board of equalization or board of review where such remedy is provided.

While the complainants' bill in the present case does not allege that the assessments complained of were fraudulently made, in the oral argument it was contended that the averments which we have hereinabove summarized are sufficient to charge that the assessments complained of were fraudulently made.

In *King v. City of Bristol,* 156 Tenn. 643, 4 S.W.2d 343, a bill in Chancery was filed to set aside a municipal tax assessment and to enjoin the collection of taxes under it. The bill charged the assessment is grossly unequal, that business property of complainants, and other landowners, was assessed much higher than their residence property, and that the difference was out of proportion to the true values. The bill further charged that the Assessor was a candidate for office and manipulated his assessments with a view to popular favor. The assessment as

made by the Assessor was approved by the Board of Equalizers. The Chancellor sustained a demurrer to the bill. This Court affirmed, stating:

"Now no charge of fraud is made against the members of the board of equalizers, or in relation to their action; the allegation being restricted to charges of interference with the proceedings and domination of the board by the tax assessor at the hearing. We are of opinion that the improprieties and irregularities charged in the procedure before the board are matters as to which a law court has exclusive jurisdiction."

\* · \* \* \* \* \* \* . \* \*

"It is true that charges of fraud on the part of the assessor in making the assessment are made in the bill, but these charges are made, we think it may be said, rather *eo nomine* than otherwise. The court looks to the facts set forth, rather than the name by which they are characterized. Analyzed, the charge is in substance that the assessor was a candidate for office, and manipulated his assessments with a view to popular favor. Such a charge, involving motives, would be exceedingly difficult of establishment by proof. But, conceding the truth of this charge, *it is to meet inequalities in the result of his work however brought about, whether by conscious favoritism or mistaken judgment, that a review of his work is provided for by the board of equalization,* and, whenever passed on and determined by that board, a bill in chancery will not lie, without a charge of fraud in its action; such action not being void." 156 Tenn. at 646, 647, 4 S.W.2d at 344. (Emphasis supplied)

■ Since, as stated in King, the purpose in having a board of equalization is to correct inequities in assess-

ments as made by the Assessor, whether deliberate or otherwise, we see no reason to make the motive of the Assessor a factor in determining whether or not an appeal to the Board of Equalization is a prerequisite to invoking the jurisdiction of the Courts.

Since the bill does not allege any facts to support the averment of the legal conclusion that an appeal to the Board of Equalization would be inadequate to secure complainants' rights, the bill fails to allege sufficient grounds for failing to obtain such review in advance of resorting to the Courts.

As stated in *McCord v. Nashville, Chattanooga & St. L. Ry.*, 187 Tenn. 277, 287, 213 S.W.2d 196, "The assessment and collection of taxes is an administrative and not a judicial function." A property owner must first diligently avail himself of the administrative remedies provided before the Courts can be called upon for relief.

Furthermore, the bill in this case does not allege that complainants' property has been assessed at more than its actual cash value, as provided by T.C.A. sec. 67-605. It is, therefore, appropriate to call attention to *Carroll v. Alsup,* 107 Tenn. 257, 292, 64 S.W. 193, where the Court held:

"* * * It is no ground for relief to him; nor can any taxpayer be heard to complain of his assessments, when it is below the actual cash valuation of the property, on the ground that his neighbors' property is assessed at a less percentage of its true or actual value than his own. When he comes into court asking relief of his own assessment, he must be able to allege and show that his property is assessed at more than its actual cash value."

The Chancellor was correct in sustaining the demurrer of the defendant. The conclusions we have reached on the questions discussed above make it unnecessary to consider other questions presented in the briefs of the parties.

The judgment of the Chancery Court is affirmed at appellants' cost.