NISSAN NORTH AMERICA, INC., Successor by Merger to Nissan Motor Manufacturing Company

v.

Linda J. HAISLIP, Marshall County Assessor of Property, et al.

Court of Appeals of Tennessee, at Nashville.

March 18, 2004 Session.

May 14, 2004.

Application for Permission to Appeal Denied by Supreme Court Nov. 15, 2004.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Mary Ellen Knack, Assistant Attorney General, for the Appellant, State Board of Equalization.

Robert O. Binkley, Sr., Lewisburg, Tennessee, for the Appellants, Linda J. Haislip, Marshall County Assessor of Property and Marshall County Board of Equalization.

Martha J. Trammell, Smyrna, Tennessee, Timothy J. Peaden, Mary T. Benton and Timothy L. Fallaw, Atlanta, Georgia, for the Appellee, Nissan North America, Inc.

## OPINION

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

The trial court determined that, under Tennessee Code Annotated § 67-5-904, Nissan North America was not liable for ad valorem tax on personal property owned by Nissan but used by its contractors to make component parts for Nissan. We reverse.

This case concerns tools owned by Nissan North America, Inc. ("Nissan") and located at the premises of Kantus Corporation ("Kantus") in Marshall County and Excel Industries "(Excel)" in Lawrence County, Tennessee (collectively, "Vendors"). The facts relevant to this lawsuit are not in dispute. Nissan owns a motor vehicle manufacturing plant in Rutherford County. It contracts with various suppliers, including Kantus and Excel, to manufacture and supply component parts. According to Nissan's specifications, the Vendors design and manufacture specialized tools (including molds, patterns, dies, jigs, fixtures, gauges) to be used exclusively in the manufacture of parts for Nissan. Nissan then purchases the tools, which are marked "Property of Nissan Motor Manufacturing Corporation USA." Although Nissan holds title to the tools, they remain physically located at the Vendors' facilities. The Vendors may not remove or dispose of the tools without Nissan's approval, and Nissan prohibits the

Vendors from commingling the tools with the Vendors' own property. Nissan retains the right to enter the premises of the Vendors and inspect the tools. Neither Nissan nor its Vendors reported the tools as tangible personal property as required by Tenn.Code Ann. § 67–5–903.

In 2000, Nissan received assessments for back property taxes on the tools dating from tax year 1997 from the Marshall County Board of Equalization ("Marshall County") and the Lawrence County Assessor of Property ("Lawrence County"). Nissan appealed the assessments to the State Board of Equalization ("the Board" or "the State"). The Board affirmed the assessments, and Nissan appealed the decisions to the Assessment Appeals Commission ("the Appeals Commission"). Nissan's appeals of the Marshall County and Lawrence County assessments were consolidated, and the Appeals Commission conducted a hearing on the matter in October 2001. In April 2002, the Appeals Commission entered an order affirming the determination of the Board.

In accordance with the Administrative Procedures Act and Tenn.Code Ann. § 67–5–1511(b), Nissan appealed the Appeals Commission's determination to Davidson County Chancery Court. The chancery court held a hearing in December 2002, which consisted of the arguments of counsel and was based on the administrative record filed by the Board. The chancery court determined that Nissan had "loaned" the tools to the Vendors. By order of March 2003, the chancery court reversed the Board's assessment, holding that Nissan was not liable for the property tax as the tools were leased under Tennessee Code Annotated § 67–5–904. The State and Marshall County filed timely notices of appeal to this Court. We reverse.

## Issue Presented

As we perceive it, the issue presented in this appeal is whether tangible personal property owned by Nissan, but under the physical control of Nissan's Vendors, who use it exclusively in the manufacture of component parts for Nissan, is properly classified as leased property under Tenn. Code Ann. § 67–5–904(a)(2)(B), such that Nissan is not liable for ad valorem personal property tax on the property.

## Standard of Review

This appeal requires us to construe the provisions of the property tax statutes as codified at Tenn.Code Ann. §§ 67–5–101, *et seq.*, and section 904 of the chapter in particular. Our primary objective when construing a statute is to effectuate the purpose of the legislature. *Lipscomb v. Doe,* 32 S.W.3d 840, 844 (Tenn.2000). Insofar as possible, we must determine the intent of the legislature from the natural and ordinary meaning of the words used in the statute, and not by a construction that is forced or which limits or extends the meaning. *Id.* Likewise, the court must seek to ascertain the intended scope of the statute, neither extending nor restricting the scope intended by the legislature. *State v. Morrow,* 75 S.W.3d 919, 921 (Tenn.2002). Our interpretation must not render any part of the statute "inoperative, superfluous, void or insignificant." *Id.* Rather, we must construe statutory provisions within the context of the entire statute, giving effect to its over-arching purpose. *Merrimack Mut. Fire Ins. Co. v. Batts,* 59 S.W.3d 142, 151 (Tenn.Ct.App. 2001). Issues of statutory interpretation are questions of law which this Court reviews *de novo,* with no presumption of correctness attached to the determination of the trial court. *Morrow,* 75 S.W.3d at 921.

### Analysis

■ We begin our analysis by noting that Tenn.Code Ann. § 67–5–901, *et seq.*, is read *in pari materia* with the Business Tax Act, which is codified at Tenn.Code Ann. § 67–4–701, *et seq. Dixie Rents, Inc. v. City of Memphis,* 594 S.W.2d 397, 398 (Tenn.Ct.App.1979). The Business Tax Act imposes a tax on the sale of tangible personal property. It is a gross receipts tax. *Id.* A sale is defined by the chapter as the "transfer of title or possession, or both, exchange, barter, lease or rental . . . of tangible personal property for a consideration[.]" Tenn.Code Ann. § 67–4–702(a)(15)(2003).

■ Chapter five of the title provides that all property, real and personal, shall be assessed for taxation for state, county, and municipal purposes, except as otherwise provided. Tenn.Code Ann. § 67–5–101(2003). The tax imposed under chapter five is an ad valorem property tax, one that is based on the value of the property taxed. *Dixie Rents,* 594 S.W.2d at 398. Chapter five further provides for the classification and rate of assessment of tangible personal property except inventories of merchandise held by merchants and taxes levied under the Business Tax Act. Tenn. Code Ann. § 67–5–901(2003). Thus, a lessor who has paid business taxes on lease income under the Business Tax Act is exempt from ad valorem property taxes on the value of the leased goods. *IBM Credit Corp. v. County of Hamilton,* 830 S.W.2d 77, 79 (Tenn.Ct.App.1992).

Section 67–5–904(a)(2) provides, in pertinent part, that for the purposes of classifying property subject to ad valorem taxes:

Leased property shall include equipment, machinery[,] and all tangible personal property used in the conduct of, or as a part of, the taxpayer's business including, but not limited to, the following:

(A) Equipment that is leased only, not sold;

(B) Equipment that is leased at nominal rent or loaned under certain circumstances[.]

Tenn.Code Ann. 67–5–904(a)(2)(2003).

■ In the present case, we agree with the State that Nissan's contractual agreements with its Vendors do not constitute leases in the traditional sense. A lease generally is construed as a transfer of the use and enjoyment of property in return for a periodic fee. *Black's Law Dictionary* 800 (5th ed.1979). In this case, the parties do not dispute that Nissan receives no rental fee for the tools and is not in the business of leasing tools. Moreover, the Vendors exercise physical control over the tools, but must use them exclusively in the manufacture of component parts for Nissan. Further, the tools are so specialized that they have no utility other than the manufacture of parts for particular products or models. Additionally, Nissan's purchase orders for the tools describe the property as "bailed property." Clearly, the parties did not construe their agreement as a lease in the ordinary sense.

■ By definition, however, for purposes of classification under the Code, leased property includes that which is "loaned under certain circumstances." Tenn.Code Ann. § 67–5–904(a)(2)(B)(2003). The trial court determined that the tools owned by Nissan but used by its Vendors were "loaned" as provided by this section, and that Nissan, therefore, was not liable for the ad valorem tax on the property. The State asserts that, on the contrary, the arrangement between Nissan and its Vendors was not a lease/loan, but a bailment for mutual benefit. We agree.

■ A bailment for mutual benefit exists

whenever it appears that both of the parties to the contract receive a benefit from the transaction. Such a bailment is one in which the parties contemplate some price or compensation in return for the benefits flowing from the fact of bailment, and it exists when one person gives to another the temporary use and possession of personal property, other than money, for compensation, and the later agrees to return the property to the former at a future time.

. . . .

*Where a bailment is a mere incident to the performance of services for which the bailee receives compensation or to the conduct of a business from which the bailee derives profit, . . . it is a bailment for mutual benefit although the bailee receives no compensation for the bailment as such.*

8 C.J.S.2d *Bailments* § 16 (1988)(emphasis added). By contrast, the type of bailment which constitutes a "loan" is a bailment for the sole benefit of the bailee. *Id.* § 18. It is an uncompensated lending in which the bailee is the sole beneficiary. *Id.* A loan is a "bailment without reward." *Black's Law Dictionary* 844 (5th ed.1979).

As noted, according to Nissan's purchase order, the tools are considered "bailed property." In this case, moreover, we cannot say that the Vendors are the sole beneficiary of the bailment, or that Nissan receives no benefit or reward from the bailment of its property to the Vendors. Indeed, Nissan permits it Vendors to use property to which Nissan retains title for the exclusive purpose of creating parts for Nissan. It is a mutually beneficial arrangement pursuant to which Nissan retains control over the purpose for which its property is used by Vendors who also profit from its use. The bailment is incidental to the Vendors' performance of services for which the Vendors receive com-

pensation and through which both Nissan and its Vendors derive a profit.

Although we agree with Nissan that the Vendors "use" the tools in their trade, we are mindful that we must interpret and construe the sections of the statute as a whole, and that the Business Tax Act and property tax provisions are read *in pari materia.* This case presents a unique factual situation in which Nissan holds title to property which it claims to "lease," but escapes liability for tax which would be imposed on the lease by providing the property, free of fee, to its Vendors. At the same time, Nissan seeks to deny liability for ad valorem property taxes by asserting it does not "use" the property in its primary business of manufacturing cars. However, Nissan exercises control over the use of its property such that its use is limited exclusively to that which furthers the business interests of Nissan.

This is not a loan of personal property, a gratuitous bailment which transfers the use of personal property from its owner/bailor to a bailee for the benefit of the bailee. In this case, Nissan has allowed its Vendors to utilize its property, but the property, or title thereto, is nonetheless held by Nissan, which clearly profits from its use. According to Nissan, it purchases the tools from the Vendors in order to accelerate capital recovery by the Vendors, take advantage of Nissan's more favorable financing rates, and to avoid over-charges and under-charges from the Vendors which could occur if costs of the tools had been amortized in the price of the parts. Additionally, as Nissan points out, this arrangement allows Nissan to avoid higher prices which would be charged by the Vendors if the Vendors incurred a separate rental fee for use of the tools. Clearly, this arrangement works to the mutual benefit of Nissan and the Vendors, is incidental to the Vendors' performance of services

for Nissan, and furthers the business interests of Nissan.

■■■■ We do not believe this arrangement constitutes a "loan[ ] under [the] certain circumstances" intended by the legislature to relieve Nissan of liability for the ad valorem tax on personal property which it undisputedly owns and which it does not rent or lease to its Vendors for purposes of the Business Tax Act. Tax exemptions are construed strictly against the taxpayer, and Nissan carries the burden of proving any exemption from taxes on property it owns. *See Covington Pike Toyota, Inc. v. Cardwell, Comm'r of Revenue*, 829 S.W.2d 132, 135 (Tenn.1992). In this case, Nissan has failed to demonstrate that it has "loaned" the tools to its Vendors such that they may be considered leased under Tenn.Code Ann. § 67–5–904(a)(2)(B).[1]

Nissan asserts that such a holding would render the term "used or held for use" included in section 67–5–903 meaningless. We do not agree. Part nine of chapter five provides for the methods of classification and rate of assessment of property subject to personal property tax. Section 101 of the chapter enables the assessment of personal property tax. Section 502 provides that "[t]he function of assessment shall be to assess: (1) All property . . . to the person or persons owning or claiming to own the same[.]" Tenn.Code Ann. § 67–5–502(a)(1)(2003). The section further provides that "[l]eased personal property shall be classified according to the lessee's use and assessed to the lessee[.]" Tenn.Code Ann. § 67–5–502(c)(2003). The legislative intent that leased property shall be classified and assessed according to the

use of the lessee is reiterated in part nine at section 67–5–901(b). As noted above, this clearly evidences the legislature's intent that a taxpayer shall not be subject to double taxation on personal property that is owned by the taxpayer but leased and, therefore, subject to taxation under the Business Tax Act. *IBM Credit Corp. v. County of Hamilton*, 830 S.W.2d 77, 78 (Tenn.Ct.App.1992).

■■■■ Part nine provides for how property is to be classified and for the rate of assessment of property, including leased property, and cannot be read in isolation from the rest of the chapter. Clearly, the lessee and not the lessor is liable for property taxes on leased property in his possession, and a lessor who has paid business taxes on the lease income is exempt from such property taxes. Under section 904(a)(2)(B) the lessee may also be liable for property taxes on "[e]quipment that is leased at nominal rent or loaned under certain circumstances[.]" Tenn.Code Ann § 67–5–904(a)(2)(B)(2003).

With all due respect to the trial court, we do not agree that Nissan has loaned the tools at issue here to its Vendors. Moreover, even if the arrangement were to be considered a loan, the circumstance present in this case are not the "certain circumstances" which would exempt Nissan from liability for property tax on these tools. As noted, in its contracts with its Vendors, Nissan clearly requires that the tools are to be used only to further Nissan's business interests. This is not a bailment without reward such that Nissan

1. Nissan asserts that it does not bear the burden of demonstrating an exemption as this case does not involve a question of an exemption, but rather only one of who is liable for the tax. We disagree. Nissan is liable for the ad valorem tax on property it owns unless it can demonstrate that it has leased the proper-

ty or that it is otherwise exempt under the Code. *See IBM Credit Corp. v. County of Hamilton*, 830 S.W.2d 77, 79 (Tenn.Ct.App.1992)(holding: a property owner who has paid taxes on leased property under the Business Tax Act is exempt from ad valorem taxes on the property).

is exempt from property taxes on tools which it owns.

### Holding

Nissan is not exempt from the ad valorem property tax imposed by section 67–5–101 on tools which it owns, does not lease for a fee subject to the Business Tax Act, and provides to its Vendors for the exclusive use of furthering Nissan's business interests. The arrangement between Nissan and its Vendors constitutes a bailment for mutual benefit, where the property physically is controlled by the Vendors but where the bailment is merely incidental to the Vendors' performance of services for Nissan, for which the Vendors receive compensation. This property has not been leased under section 67–5–904. Accordingly, we reverse the judgment of the chancery court and reinstate the assessment of the Board. Costs of this appeal are taxed to the Appellee, Nissan North America, Inc.