IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 23, 2010 Session

DANA CORPORATION v. LOREN L. CHUMLEY, Commissioner of
Revenue, State of Tennessee

Appeal from the Chancery Court for Davidson County
No. 04-3225-III     Ellen H. Lyle, Chancellor

No. M2009-00888-COA-R3-CV - Filed May 28, 2010

This appeal involves the denial of a claim for job tax credits by the Commissioner of
Revenue. The taxpayer asserts that it qualifies for the credits pursuant to Tenn. Code Ann.
§ 67-4-2109(c)(2)(A). The trial court determined that the taxpayer, as a successor to the
entity that originally earned the credits, is barred by Tenn. Code Ann. § 67-4-2109(e)(1) from
utilizing the remaining credits for the years at issue. The taxpayer appeals. We affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS,
P.J. and RICHARD H. DINKINS, J., joined.

Charles A. Trost, Brett R. Carter, and Christopher A. Wilson, Nashville, Tennessee, for the
appellant, Dana Corporation.

Robert E. Cooper, Jr., Attorney General & Reporter; Michael E. Moore, Solicitor General;
and Jonathan N. Wike, Assistant Attorney General, for the appellee, Commissioner of
Revenue, State of Tennessee.[1]

OPINION

I. BACKGROUND

_____

[1]When the suit was originally filed, Loren L. Chumley was the Commissioner of Revenue. Reagan
Farr is the current Commissioner.

Dana Corporation ("Dana") is a Virginia corporation properly qualified to do business in Tennessee, with its principal office located in Toledo, Ohio. Dana and its affiliates are engaged in the manufacture of automobile parts and supplies.

Plumley Companies, Inc. ("PCI"), was headquartered in Paris, Tennessee, and was engaged in the manufacture and distribution of extruded and molded rubber and silicone sealing products, primarily for automotive applications. PCI, employing more than 1,600 people, had manufacturing facilities in Paris and McKenzie, Tennessee, as well as other locations, and a sales office in Troy, Michigan.

Between 1992 and 1993, PCI made an investment of $2,016,708 in its manufacturing facilities located in Tennessee. PCI filed with the Tennessee Department of Revenue a business plan reflecting an increase of 109 net new full-time jobs in order to earn a job tax credit in the amount of $218,000. PCI subsequently used portions of the job tax credit to offset its franchise tax liability by separate offsets of $18,079, $17,374, $18,079, and $18,079. The final franchise and excise tax return filed by PCI was for the short period ending January 31, 1995.

On February 1, 1995, Dana acquired PCI's stock, which it contributed to a Dana subsidiary created for the purpose of acquiring PCI. The Dana subsidiary then merged with PCI. The surviving entity was called Plumley, Inc. ("Plumley"). On January 1, 1997, Dana merged with Plumley, with the surviving entity being Dana. Following the merger, the manufacturing operations formerly owned by PCI remained as a division of Dana.

Dana claimed a job tax credit based on its acquisition of PCI on its franchise and excise tax returns for the years 2001 and 2002. By two notices of outstanding franchise and excise tax liability, each dated November 7, 2003, the Commissioner of Revenue ("Commissioner") disallowed Dana's claim in the total amount of $182,287.06 for the tax years 2001 and 2002. By check dated February 5, 2004, Dana paid the full amount of the franchise and excise tax liability, plus interest, for the tax years 2001 and 2002. On April 14, 2004, Dana filed a claim seeking a refund. The claim was subsequently denied.

In November 2004, Dana initiated this lawsuit, asserting that it had created job tax credits through its acquisition of PCI.[2] In an amended complaint filed in May 2008, Dana

---

[2] The basis for the refund claim in Dana's original complaint was essentially the same as that argued by the taxpayer in *Weyerhaeuser Co. v. Chumley*, No. M2005-00212-COA-R3-CV, 2007 WL 2580025 (Tenn. Ct. App. M.S., Sept. 7, 2007), namely, that a taxpayer company can create the required "net new full-time employee jobs[s]," pursuant to Tenn. Code Ann. § 67-4-2109(c)(2)(A), through acquisition rather than through the original hiring of the employees.

no longer contended that it was entitled to tax credits as a result of its acquisition of PCI, but maintained that it was entitled to use the remaining carryover job tax credits generated by PCI. In its second amended complaint, filed in November 2008, Dana requested that it be refunded $36,158.

In December 2008, both parties filed motions for summary judgment. Following a hearing, the trial court awarded summary judgment in favor of the Commissioner, holding that Tenn. Code Ann. § 67-4-2109(e)(1) (Supp. 2002) bars successor entities from taking the credit for the years at issue. Dana filed a timely notice of appeal from this ruling.

In a separate ruling that did not override the trial court's denial of Dana's refund claim, the court determined that Dana would not be barred as a successor entity based solely on Tenn. Code Ann. § 67-4-2109(c)(2)(A). In this separate ruling, the trial court applied this court's reasoning in *Little Six Corp. v. Johnson*, No. 01-A-01-9806-CH-00285, 1999 WL 336308 (Tenn. Ct. App., M.S., May 28, 1999). In *Little Six*, this court found that credits generated by an entity may be used by its successors in interest. In the instant case, the trial court noted that Tenn. Code Ann. § 67-4-2109(c)(2)(E) provides that any unused tax credits incurred for a period before July 1, 1999, may be carried forward "subject to the limitations established by prior law." The court found that the law relating to the job tax credit carryforward in effect on the date of the merger was Tenn. Code Ann. § 67-4-908, and that the language of that provision did not explicitly prohibit the carryforward of unused job tax credits by a successor merged corporation. Thus, the trial court concluded that, should Tenn. Code Ann. §67-4-2109(c)(2)(E) control, *Little Six* dictates that Dana would be entitled to a refund.

## II. ISSUE

The issue presented for our review is as follows:

> Whether the trial court correctly held that Tenn. Code Ann. § 67-4-2109(e)(1) (Supp. 2002) bars Dana from taking a job tax credit against its Tennessee franchise and excise tax liability for the years 2000 and 2001, where Dana's only means of claiming the credit is as a successor to PCI, which was the company that created the net new jobs on which the claim was based.

The Commissioner requests that this court review the trial court's decision on the separate issue decided in reliance upon *Little Six* and hold that Tenn. Code Ann. § 67-4-2109(c)(2)(A) bars Dana's refund claim independently of Tenn. Code Ann. § 67-4-2109(e)(1).

## III. STANDARD OF REVIEW

"Issues of statutory interpretation are questions of law which this Court reviews *de novo*, with no presumption of correctness attached to the determination of the trial court." *Nissan N. Am., Inc. v. Haislip*, 155 S.W.3d 104, 106 (Tenn. Ct. App. 2004) (citing *State v. Morrow*, 75 S.W.3d 919, 921 (Tenn. 2002)). "[W]hen there is no conflict in the evidence as to any material fact . . ., the question on appeal is one of law, and [the] scope of review is *de novo* with no presumption of correctness. . . ." *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus.,*788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

As noted in *Gate Bluegrass Precast, Inc. v. Chumley*, No. M2007-00250-COA-R3-CV, 2008 WL 695867 (Tenn. Ct. App. W.S., Mar. 14, 2008),

> [t]he rules governing statutory construction are well-established. When interpreting a statute, the court is to "ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." We must ascertain the intent of the legislature from the natural and ordinary meaning of the statutory language and in context of the entire statute, without forcing a construction that would limit or expand its scope. When the language of a statute is clear, we must utilize the plain, accepted meaning of the words used by the legislature to ascertain the statute's purpose and application. If the wording is ambiguous, however, we must look to the entire statutory scheme and at the legislative history to ascertain the legislature's intent and purpose. We must construe statutes in their entirety, assuming that the legislature chose the words of the statute purposely, and that the words chosen "convey some intent and have a meaning and a purpose" when considered within the context of the entire statute.

> The court must construe tax statutes liberally against the taxing authority. ***Tax exemptions, however, are construed strictly against the taxpayer, who must carry the burden of demonstrating an entitlement to the exemption. Tax exemptions will not be implied. Rather, there is a presumption against exemption, "and any well founded doubt defeats a claimed exemption."***

*Id.* at *2 (citations omitted) (emphasis added).

## IV. DISCUSSION

The statute that grants a job tax credit against a taxpayer's franchise and excise tax liability and governs the tax years in question, 2001 and 2002, states, in relevant part:

(c)(2)(A) A job tax credit of two thousand dollars ($2,000) for each net new full-time employee job shall be allowed against a taxpayer's franchise and/or excise tax liability for that year; provided, that:

(i) The job filled is for a position newly created in Tennessee, and, for at least ninety (90) days prior to being filled by the taxpayer, did not exist in Tennessee as a job position of the taxpayer or of another business entity;
(ii) The job position was filled during the tax year and was in existence at the end of the tax year;
(iii) The taxpayer has met the required capital investment in the qualified business enterprise;
(iv) The credit shall first apply in the tax year in which the qualified business enterprise increases net full-time employment by twenty-five (25) or more jobs, and in those subsequent fiscal years in which further net increases occur above the level of employment established when the credit was last taken; and
(v) The new full-time employee jobs are filled prior to January 1, 2008.

\* \* \*

(E) Any unused job tax credit incurred for a tax year beginning prior to July 1, 1999, may be carried forward for fifteen (15) years after the fiscal year in which the credit originated, subject to the limitations established by prior law. Any unused job tax credit incurred for a tax year beginning on or after July 1, 1999, may be carried forward for fifteen (15) years after the tax year in which the credit originated.

\* \* \*

(e)(1) Each taxpayer is considered a separate entity; therefore, in the case of mergers, consolidations, and like transactions, no tax credit incurred by the predecessor taxpayer shall be allowed as a deduction on the tax return filed by the successor taxpayer. With the exception set forth in subdivision (e)(2), a

credit carryforward may be taken only by the taxpayer that generated it.

(2) Notwithstanding the provisions contained in subdivision (e)(1), when a taxpayer merges out of existence and into a successor taxpayer that has no income, expenses, assets, liabilities, equity or net worth, any qualified Tennessee credit carryover of the predecessor that merged out of existence shall be available for carryover on the return of the surviving successor' provided, that the time limitations for the carryover have not expired.

Tenn. Code Ann. § 67-4-2109 (Supp. 2002).

When the General Assembly completely revised the job tax credit statute in 1999, it inserted, among other things, section 67-4-2109(e)(1), which expressly prohibited successor use of carryovers. 1999 Pub. Acts, Ch. 406 deleted the prior provision contained in Tenn. Code Ann. § 67-4-908 (1998), which did not contain the express prohibition against successor use of the credits. Chapter 406 expressly provided that it "shall apply to tax years beginning on or after July 1, 1999." Dana's claim for a refund is based on job tax credits asserted for the tax years 2001 and 2002. Clearly, those tax years began after July 1, 1999. Thus, under the language of 1999 Pub. Acts, Ch. 406, and Tenn. Code Ann. § 67-4-2109(e)(1), after July 1, 1999, no job tax credit was available to taxpayers claiming the credit as successor entities.

Dana admits the language of Tenn. Code Ann. § 67-4-2109(e)(1) clearly excludes successor entities. There is no dispute that PCI – not Dana – generated the credits by creating the jobs. Accordingly, Tenn. Code Ann. § 67-4-2109(e)(1) specifically prohibits Dana from claiming the remaining job tax credits as a successor to PCI. Even if Tenn. Code Ann. § 67-4-2109(c)(2)(A) would have permitted Dana to take the job tax credit against its tax liability for the years preceding 1999, any prior availability of the credit would not continue into the years in which Tenn. Code Ann. § 67-4-2109(e)(1) was in effect.

In our view, the trial court did not apply Tenn. Code Ann. § 67-4-2109(e)(1) retroactively. While Dana argues that section (e)(1) was not part of the pre-1999 law and cannot be the basis for limiting job tax credits generated under pre-1999 law, the version of the tax law to be applied when determining a taxpayer's liability is the tax law in effect during the period for which the tax is being paid. *See Associated P'ship I, Inc. v. Huddleston*, 889 S.W.2d 190, 195 (Tenn. 1994); *Gate Bluegrass Precast, Inc. v. Chumley*, No. M2007-00250-COA-R3-CV, 2008 WL 695867, at *3 (Tenn. Ct. App. W.S., Mar. 14, 2008) (noting "[T]he Code applicable to this dispute is the Code as it existed during the tax period at issue."). A taxpayer's tax liability for any particular period includes the application of any credit that is available under the version of the statute in effect for that period. Thus,

whether or not a particular credit is available depends entirely on the version of the law in effect for the tax period for which the taxpayer's tax liability is being determined. "[T]ax credits are, for all practical intents, 'a matter of legislative grace,' which the Legislature 'may grant or deny in any manner it sees fit; . . . and the scope, application, and terms of eligibility are entirely for the Legislature to establish.'" *State Bldg. & Constr. Trades Council of California v. Duncan*, 162 Cal. App. 4th 289, 323 (Cal. Ct. App. 2008) (quoting *Gen. Motors Corp. v. Franchise Tax Bd.*, 139 P.3d 1183 (Cal. 2006)).

Furthermore, as noted in *Penn-Dixie Cement Corp. v. Kizer*, 250 S.W.2d 904 (Tenn. 1952),

> it has been repeatedly held in this State that the Constitution, Art. I, Sec. 20, forbidding retrospective laws, means only that no retrospective law which impairs the obligation of a contract or divests or impairs vested rights shall be passed. . . . As the Act neither impairs the obligation of contracts, nor affects vested rights, it does not fall within the inhibition of either the State or National Constitutions.

*Id.* at 908. The statutory provisions at issue do not involve contractual obligations, as the General Assembly expressed no intention to bind the State contractually. S*ee Baker v. Arizona Dept. of Revenue*, 105 P.3d 1180, 1184 (Ariz. Ct. App. 2005) (stating "[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'") (quoting *Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry.*, 470 U.S. 451, 465-66, 105 S.Ct. 1441 (1985)). We further note that Dana's acquisition of PCI in 1995 did not create a vested right to the credits contained in former section 67-4-908 that survived the replacement of that section by 1999 Pub. Acts, Ch. 406. A taxpayer has no vested right in unused credits the availability of which has been repealed. *Capital Fin. Corp. v. Comm'r of Taxation and Finance*, 639 N.Y.S.2d 501, 503 (N.Y. App. Div. 1996). As stated in *Garofolo, Curtiss, Lambert & MacLean, Inc. v. Commonwealth*, 648 A.2d 1329 (Pa. Commw. Ct. 1994), "[a] tax deduction is not a vested right of the taxpayer. The . . . carry-forward deduction is a creature of the legislature, subject to repeal, suspension or reinstatement by the legislature, so long as it does not act in an arbitrary and unreasonable manner." 648 A.2d at 1334. "[A] taxpayer has no vested rights in a taxing statute; hence, he or she has no vested right in the continuance of particular tax laws." 16A C.J.S. *Constitutional Law* § 394; *see also Penn-Dixie Cement Corp.,* 250 S.W.2d at 909 (stating "an income tax law is not unconstitutional merely because of its retrospective operation, especially where such laws only affect deductions that may be taken from income, which are matters of legislative favor . . . ." and "[t]he state was not cut off from . . . changing its method of . . . excise taxation.").

Accordingly, even if one were to assume that Dana would have been entitled to PCI's unused credits under the law as it existed prior to 1999, that eligibility was eliminated by the 1999 Pub. Acts, Ch. 406, and any unused credits were lost. *King v. Campbell County*, 217 S.W.3d 862, 869 (Ky. Ct. App. 2006) (repeal of tax credit does not violate constitutional prohibition against retroactive impairment of "vested" rights); *Rivers v. State*, 490 S.E.2d 261, 263 (S.C. 1997) (finding "case law from the United States Supreme Court and courts throughout the country makes clear that taxpayers have no vested interest in tax laws remaining unchanged").

Dana also argues that rather than focusing on the provision set forth in section (e)(1), the court should rely on the language of the revised job tax credit set forth in Tenn. Code Ann. § 67-4-2109(c)(2)(E) that provides "[a]ny unused job tax credit incurred in a tax year beginning prior to July 1, 1999, may be carried forward for fifteen (15) years after the fiscal year in which the credit originated, *subject to the limitations established by prior law*." (Emphasis added). By this language, Dana asserts that the Legislature intended for the law regarding carryover credits in effect prior to the enactment of the amended statute to continue applying to job tax credits incurred prior to the 1999 amendment. Thus, Dana claims that the law in effect during the tax years at issue in this case specifically incorporated "prior law" as the law applicable to determine how the job tax credits incurred prior to July 1, 1999, are to be carried forward and applied in subsequent periods. Dana relies on the fact that this "prior law" does not provide for a limitation on the ability of a successor entity to claim job tax credits.

We do not find Dana's argument concerning "prior law" persuasive. We agree with the Commissioner that the phrase "limitations established by prior law" refers to the provisions in Tenn. Code Ann. § 67-4-908(c)(2)(E) and (F) (1998), which limited the dollar amounts of the credit for each tax year. The 1999 revision sets forth in § 67-4-2109(c)(2)(E) the limits on the dollar amount for credits and carryovers for tax years *after* July 1, 1999. Under the 1999 revision, the dollar amount for credits earned after July 1, 1999, is determined according to the percentages set forth in § 67-4-2109(c)(2)(F), while the dollar amount for credits earned before July 1, 1999, is determined according to "the limitations established by prior law," namely the formula set forth in Tenn. Code Ann. § 67-4-908(c)(2)(F)(1998).

For the reasons discussed, we find that Dana has not met its burden to demonstrate an entitlement to the carryover credits. The trial court did not err in determining that Tenn. Code Ann. § 67-4-2109(e)(1) bars Dana from using the job tax credits created by PCI.

### *Little Six* Ruling

Dana also relies on this court's decision in *Little Six Corp. v. Johnson*, No., 01-A-01-9806-CH-00285, 1999 WL 336308 (Tenn. Ct. App. M.S., May 28, 1999), in support of its claim to the carryover credit. The trial court agreed with Dana that under the statutory analysis in *Little Six*, a decision released shortly before section 67-4-2109(e)(1) was added to the Code, the statutory language of Tenn. Code Ann. § 67-4-2109(c)(2)(A) would allow Dana to take the credit. The trial court held, however, that because § 67-4-2109(e)(1) absolutely bars Dana's claim, its decision as to the *Little Six* argument did not result in an award of summary judgment to Dana. We concur in the trial court's ruling that section 67-4-2109(e)(1) bars Dana's claim; we further agree with the court that its decision based on section 67-4-2109(e)(1) renders its alternative decision on the *Little Six* analysis moot. Now that the subsection has been added, it is no longer necessary to analyze the statutory language to determine whether it implies that successor entities through merger are entitled to carryover credits. Tenn. Code Ann. § 67-4-2109(e)(1) expressly holds that such entities are not entitled to the credit and renders any other statutory language extraneous to this issue. Accordingly, as we do not find it necessary to resolve the issue of whether the trial court erred in its separate ruling based on *Little Six*, we will not discuss it here.

### Attorney's Fees

The Commissioner seeks to recover attorney's fees and expenses incurred in this litigation pursuant to Tenn. Code Ann. § 67-1-1803(d). Tennessee follows the American Rule with regard to attorney's fees, which provides that, absent a statute or agreement to the contrary, each litigant is responsible for paying its own attorney's fees and litigation expenses. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). However, the General Assembly enacted a statute that mandates an award of reasonable attorney's fees and expenses to the prevailing party in tax litigation pursuant to Tenn. Code Ann. § 67-1-1803. The relevant portion of the statute provides:

> The court shall award to the prevailing party reasonable attorneys' fees and expenses of litigation up to twenty percent (20%) of the amount assessed or denied, including interest after payment. For purposes of this subsection (d), attorneys' fees shall not exceed fees calculated on the basis of reasonable hourly rates multiplied by a reasonable number of hours expended in the case and shall not be calculated by application of any premium, enhancement, or contingency.

Tenn. Code Ann. § 67-1-1803(d). It is up to the trial court to set the amount of fees within

the guidelines set forth in the statute.  *Carson Creek Vacation Resorts, Inc. v. State, Dept. of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993).

The Commissioner prevailed on the matters in controversy; therefore, the Commissioner is entitled to an award of attorney's fees and expenses arising from this litigation, which includes her fees and expenses in the trial court and on appeal.  *See Carson Creek*, 865 S.W.2d at 2.  We therefore remand to the trial court for a proper determination of the fees and expenses the Commissioner is entitled to recover pursuant to Tenn. Code Ann. § 67-1-1803(d).

## V.  CONCLUSION

The decision of the trial court disallowing the credits and denying the refund claim is affirmed.  This case is remanded to the trial court for an award of attorney's fees to the Commissioner as required by Tenn. Code Ann. § 67-1-1803(d), and for assessment of costs below.  Costs of the appeal are assessed against the appellant, Dana Corporation.

_____
JOHN W. McCLARTY, JUDGE